The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

**SUSHOLTZ et al. v. CITY OF HOUSTON.**

No. 1250—5630.

Commission of Appeals of Texas, Section B.

April 1, 1931.

Allen B. Hannay and C. A. Teagle, both of Houston, for plaintiffs in error.

Sam Neathery, City Atty., Fulbright, Crooker & Freeman, Sewall Myer, J. H. Painter, and Sidney Benbow, all of Houston, for defendant in error.

RYAN, J.

This is a proceeding filed by the city of Houston, in the exercise of its right of eminent domain, on January 23, 1925, with the county judge at law, for the condemnation for street purposes of a certain tract of land lying on Buffalo Drive within the city, owned by Mrs. Rosa Susholtz and others.

The judge appointed three commissioners to assess the damages, and they, on February 11, 1925, filed their award, assessing such damages at the sum of $1,800, the city to pay all costs of the proceeding.

On February 18, 1925, the city filed its appeal from such award, to the county court, deposited with the clerk of that court the sum of $3,600 as double the amount of the award, and took possession of the property. The city did not then pay the costs incurred before the commissioners, but did so afterwards on October 26, 1928, before the trial in the county court. The city did not, at any time, give any bond to secure any other costs that had accrued or might accrue.

In the county court, where a trial de novo was had, the city contended that the measure of damages should be fixed as of the date it took the possession, but the court held that because the city had not given bond to secure the costs and had not then paid the costs accrued up to the time it took possession, its entry was unlawful and the measure of damages should be fixed as of the date of the trial, on November 27, 1928.

The trial court therefore submitted the cause to a jury upon the single issue: "What do you find to be the reasonable cash market value of the property in question on the 27th day of November, 1928?" The jury returned an answer of $27,150, and the county court rendered judgment against the city for that sum.

On appeal, the Court of Civil Appeals found that the city's entry was lawful and the measure of damages should be fixed as of the date of such entry, and accordingly reversed the judgment of the county court and remanded the case for another trial. 22 S.W.(2d) 537.

The only question before us is whether or not the entry of the city upon the land in controversy, after depositing the requisite

amount of money with the county clerk, was rendered unlawful by reason of the fact that the city did not deposit a bond to secure any costs which might be adjudged against it in the court below or upon appeal.

The power of eminent domain was conferred, by the Legislature, upon the city of Houston by the Special Acts of the Twenty-Ninth Legislature, 1905, c. 17, and the manner of the exercise of that power is therein provided in article 4, § 2, of the city's charter, which is as follows: "To effect a condemnation, the same proceedings shall be taken and the same statutes shall govern, so far as applicable, as obtain and apply to the condemnation of lands by railway companies under the general statutes of the State of Texas."

From this provision of the acts of the Legislature it will be seen that the general statutes regulating condemnation of property by railroads were adopted into the charter of the city of Houston, in so far as applicable. They were not adopted in toto, as is the impression left by a cursory reading of the argument filed herein by plaintiff in error.

Article 9, § 8, of the same act of the Legislature provides as follows: "It shall not be necessary in any action, suit or proceeding in which the City of Houston is a party for any bond, undertaking or security to be demanded or executed by or on behalf of said City in any of the State courts, but all such actions, suits, appeals or proceedings shall be conducted in the same manner as if such bond, undertaking or security had been given as required by law, and said City shall be just as liable as if security or bond had been duly executed."

Therefore the laws relative to the condemnation of land by railroads shall be applicable to condemnation proceedings by the city of Houston in so far as they do not conflict with other provisions of the charter of the city of Houston, as enacted by the Twenty-Ninth Legislature. Clearly this statute is in conflict with article 9, § 8, of the same legislative act, wherein it is provided that the city of Houston shall not be required to execute any bond, undertaking or security in any proceeding in any state court, but that the proceeding shall be conducted as if the bond had been given as required by law. This section not only exempts the city from giving a cost bond, but it is all inclusive by its terms and provides, in effect, that if any such bond is necessary under the statutes, although none is furnished by the city, such proceedings shall be conducted in the same manner as if such bond had been given as required by law.

■ The provision requiring railroads, as a prerequisite to entry on property sought to be condemned, to pay accrued costs and give bond securing additional costs (carried into the Revised Civil Statutes of 1925, as article 3268) was approved April 15, 1899 (Acts 1899, p. 105, c. 70), while the charter of the city of Houston was granted afterwards by special act of the Legislature approved March 18, 1905, and repealed all laws and parts of laws in conflict therewith (Special Acts 1905, c. 17, pages 131 and 171). The charter must therefore control, so long as there is no infringement of the constitutional requirement that adequate compensation must first be made or secured by a deposit of money. Const. art. 1, § 17.

In Baldwin v. City of San Antonio, 59 Tex. Civ. App. 262, 125 S. W. 596, the city gave the bond and paid the costs as required by the statute governing railroads, and is therefore different from the present case, but Judge Neill held that the deposit of money gave full security for the taking of the property.

■■ It cannot be said that there is any infringement on this constitutional inhibition by the two cited provisions of the charter granted by the Act of the Twenty-Ninth Legislature. Provision was made for the securing of compensation by a deposit of money, and this constitutional requirement was satisfied by the deposit of the $3,600 as provided by the statute. There is no other constitutional restriction as to the exercise of the right of eminent domain, and with this one exception the Legislature has the power and authority to provide such method for the exercise of this power of sovereignty, as it chooses.

■ When the city's charter was enacted in 1905, article 11, § 5, of the Constitution, specifically conferred upon the Legislature the power to enact just such special laws. Subsequent to the enactment of this special act, the Constitution was amended by the adoption of article 11, § 5, as it is now, into the Constitution, in lieu of the old article providing for charters for cities of a certain class by special laws, but, under the present constitutional provision, the only way in which those special charter provisions might become void is by the enactment of a general law relating to the same subject.

Prior to the revision of the statutes in 1925 there was no general law of the state with reference to condemnation of property by cities and towns; the only general law with reference to condemnation was the statute relating to condemnation by railroads, which specifically provided that they should apply to condemnation by railroad corporations, and article 3268 was a part of this railroad condemnation law. It did not, by its very own terms, prior to the 1925 revision, purport to apply to or affect the rights of cities to condemn lands, but was, in many instances, adopted into the charters of cities and towns by reference. By the act of 1905, chapter 17, it was adopted into the charter of the city of Houston with the exceptions above noted, and

similarly was adopted into other city charters. There was not any general law regulating the exercise of the power of eminent domain by all of the public and quasi public corporations, including cities, exercising that right. By the recodification and revision of the laws in 1925, however, the Legislature undertook to group all of the provisions for the exercise of the power of eminent domain by all public and quasi corporations under one title known as title 52 of the 1925 Revised Statutes (articles 3264–3271), and upon the taking effect of the 1925 Revised Statutes there was for the first time a general law of the state regulating the exercise of the power of eminent domain by any or all corporations exercising this power. These statutes, by section 24 of the Final Title, were made to become effective at 12 o'clock, meridian, on the 1st day of September, 1925, and therefore until that time there was no general law of the state providing for the exercise of the power of eminent domain by cities such as Houston, and until that time the charter of the city would control.

■■ The city made the deposit required by the Constitution, prior to the 1st day of September, 1925, and the right of the city of Houston with reference to the going into possession of property, pending litigation, must of necessity be determined, not by the general laws as they were after the enactment of the 1925 revision, but by the law or charter in effect prior thereto, and these rights must be controlled by the charter provisions since there were no other provisions by which they could be controlled. The city was not required under the charter to give any bond as required by article 3268, R. C. S. 1925, and this charter provision is not void, since it was not, at the time of the taking of possession by the city, in conflict with any general law of the State relating to the same subject, even if it might be construed to be in conflict with a general statute subsequently enacted by the Legislature in the adoption of the Revised Statutes of 1925.

■ If the city's entry was not unlawful at the time it was made, a subsequent enactment of the Legislature does not invalidate such entry.

The provision as to costs and bond, therefore, involves no indispensable right of the property owner, but is for the benefit of the officers of court, who are fully protected in the quoted charter provision, that the city "shall be just as liable as if security or bond had been given."

■ City charters exempting cities from giving bond in actions and suits are valid. City of San Antonio v. Smith, 27 Tex. Civ. App. 327, 65 S. W. 41; City of Hallettsville v. Long (Tex. Civ. App.) 28 S. W. 573; City of

Vernon v. Montgomery (Tex. Civ. App.) 33 S. W. 606; City of Victoria v. Jessel, 7 Tex. Civ. App. 520, 27 S. W. 159.

It must be remembered that the bond in question, required of railroad companies, is not to secure the property owner in the value of the property taken, but only for costs.

We think that the Court of Civil Appeals correctly decided the question at issue, and therefore recommend that its judgment reversing that of the trial court be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals reversing that of the county court is affirmed, as recommended by the Commission of Appeals.