PIERATT et ux. v. CITY OF LA GRANGE.

No. 9372.

Court of Civil Appeals of Texas. Austin.

April 7, 1943.

Rehearing Denied April 28, 1943.

C. C. Jopling, of LaGrange, for appellants.

Theo. W. Lueders, City Atty., and Edw. H. Moss, both of LaGrange, for appellee.

McCLENDON, Chief Justice.

The Pieratts (Pieratt and wife) sued the City (City of La Grange) to recover loss of profits in Pieratt's business as owner and operator of a gasoline filling station situated on a lot abutting on State Highway No. 71 in the city limits, the loss being occasioned by the temporary (April 1 to September 1, 1941) obstruction of the Highway, while it was being widened, paved and otherwise reconditioned. Liability was predicated upon a contract between the City and the Department (State Highway Department), under which the Department did the work and the City assumed all liability to abutting property owners, the validity of the contract being asserted under the provisions of Art. 6673—b, Vernon's Ann.Civ.St. The case was tried to the court and judgment was rendered in favor of the City upon the holding that "as a matter of law" the City was not liable, and that "if any damages were sustained at all by plaintiffs, it was because of the act of" Uvalde (Uvalde Construction Company) who did the work under contract with the Department and under direct supervision of the Department's engineers.

The correctness of this holding is the controlling question the appeal presents.

Art. 6673—b was added to the statutes and became effective May 15, 1939, S.B. 415, Gen.Laws 46th Leg.Reg.Sess., p. 581. It reads: "The State Highway Commission is hereby authorized and empowered, in its discretion, to enter into contracts or agreements with the governing bodies of incorporated cities, towns, and villages, whether incorporated under the home rule provisions of the Constitution, Special Charter, or under the General Laws, providing for the location, relocation, construction, reconstruction, maintenance, control, supervision, and regulation of designated State highways within or through the corporate limits of such incorporated cities, towns, and villages, and determining and fixing the respective liabilities or responsibilities of the parties resulting therefrom; and such incorporated cities, towns, and villages are hereby authorized and empowered, through the governing bodies of

such cities, towns, and villages to enter into such contracts or agreements with the State Highway Commission."

Section 2 of the Act reads: "The provisions of this Act shall be cumulative of all laws on this subject, and wherever the provisions of this Act are in conflict with any existing law or laws on this subject, the provisions hereof, in so far as same are in conflict with any existing laws or law, shall govern and control."

The City had more than 1,000 inhabitants according to the last preceding federal census, and had authority to condemn property for street and other purposes. October 9, 1940, the City passed an ordinance, the pertinent portion of which read:

"Whereas, the public convenience, safety and necessity of the City, and the people of the City require that the portion of State Highway No. 71 be reconstructed, since the existing street constitutes a danger and serious inconvenience to the public which is urgently required to be remedied; and

"Whereas, the City has requested the State of Texas to contribute financial aid in the street project; and

"Whereas, the State of Texas has made it known to the City that it will assist the City in the street project by furnishing the necessary funds for the actual construction or reconstruction; and by supervising construction, providing the City approves the plans, grades and alignment for said project; and

"Whereas, the City, in consideration of the provision of said project agrees to protect the State of Texas from any and all liability and all damages to adjoining and abutting property or other property or business or to any tenants occupying such property caused by the installation, the construction, the existence, the use and the maintenance of the street project or the passage and enforcement of this ordinance.

"Now, Therefore, Be It Ordained By The City Council:

"Section 1. That since the public convenience, safety and necessity of the City and the people of the City require it, said street shall be reconstructed.

"Section 2. That the State of Texas be and is hereby authorized to construct the street project at the location and in the manner shown on the plans, attached hereto and marked 'Exhibit A' and made a part hereof in all respects.

"Section 3. That nothing in this ordinance shall be construed to require the State of Texas to assume or pay any direct, incidental, or consequential damages to adjoining, abutting or other property or business or to any tenants occupying adjoining, abutting or other property caused by incidental to, or in any way connected with the passage and enforcement of this ordinance and/or by the installation, the construction, the use and/or the maintenance of the street project, authorized herein, or to defend any suit or suits which may be brought against the State of Texas by any party or parties for the recovery of any such damages.

"Section 4. For and in consideration of the mutual covenants herein contained, the City does hereby agree that all damages and claims for damages to adjoining, abutting or other property, if any there be, arising out of, incident to, or in any way connected with the installation, the construction, the use, the existence, and/or the maintenance of said street project, shall be adjusted and paid solely by the City and the City shall and does hereby agree to hold harmless the State of Texas against any and all claims, demands and causes of action for recovery of any and all such damages arising out of the installation, the construction, the use, the existence, and/or the maintenance of said street project and agrees to assume the defense of any and all suits brought for the recovery of all alleged damages, and shall intervene and make itself a party therein in its own name, if it is not already made a party thereto for the purpose, and shall if requested in writing by the State of Texas, so to do, wholly relieve the State of Texas from defending the same, and hereby agrees to hold the State of Texas harmless as to all judgments, court costs, attorneys' fees and all expenses in connection with such suits."

The contract between the City and the Department bore the same date and was copied in full in the ordinance. Its terms were the same as those of the ordinance above quoted. In order to widen the street in accordance with plans for the project, the City condemned a strip off the front of the Pieratt lot about 45 feet wide, electing to pay for the actual amount of land taken and for the cost of moving the improvements thereon to the remaining portion of the lot. A jury of view assessed these sums at $100 for the land and $420 for moving the improvements, which sums the

'City paid and the Pieratts accepted. Prospective damage due to temporary interference with traffic on the street was not taken into consideration. April 10, 1941, the Pieratts (by attorney) wrote a letter to the City, stating that they would claim damages for the loss of business incident to the traffic interference and would file an itemized claim therefor as soon as the amount could be ascertained. September 30, 1941, they filed their itemized claim, aggregating $1,145.34, the basis of which was the decrease in net profits for the stated four months in 1941 under those for the corresponding four months of 1940, plus the same percentage of increase in the preceding December, 1940–March, 1941 (inclusive) over December, 1939–March, 1940 (inclusive). The Pieratts had been in the same business at the same place for a number of prior years. The interference with the business consisted in tearing up and reconstructing the street, digging a storm sewer in front of the lot, piling dirt excavated from the storm sewer ditch on the side of the ditch, at times barricading the street, thus rendering the filling station inaccessible to customers during most, if not all, of the four months period. Except for lowering its water mains to the necessary depth below the paving level, the City had nothing whatever to do with the construction work. It was all done by Uvalde under contract with the Department, in accordance with plans drawn by the Department and approved by the City, and under direct and constant supervision of Department engineers. The City introduced these engineers as its witnesses, who testified that everything done by Uvalde was in accordance with the contract and under their supervision and direction, and was necessary in the proper execution of the project.

That the contract was one which was authorized by Art. 6673—b and bound the City to discharge any liability which the State incurred or would have incurred in the absence of contract, we think there can be no question. The Article seems to us too plain to admit of any doubt upon this subject.

The City relies upon City of Wichita Falls v. Real Estate Trust, Tex.Civ.App., 135 S.W.2d 736, error dismissed, judgment correct, and other cases of similar import holding that the State and not the City is liable for damages to real estate occasioned by the construction or improvement by the Department of a designated State Highway within the City's limits. These cases arose before the enactment of Art. 6673—b, nor was there a contract involved in which the City assumed the State's liability.

The City further contends that the City "was without authority to execute a contract indemnifying the contractor from any loss that might result to a third person, and such a contract would be an ultra vires contract." The only authority cited in support of this contention is Elston v. Panhandle, Tex.Civ.App., 46 S.W.2d 420. We do not regard that case as having any material bearing upon the case at bar. There the City had ordered a street closed to enable a railroad to construct a depot across it. Both the City and the railroad were sued by a property owner. Thereafter the latter settled with the railroad and dismissed it from the suit. Later judgment was rendered in favor of the City upon a directed verdict, which was affirmed upon the holding that closing the street for the stated purpose was unlawful and ultra vires the City's powers. In a per curiam opinion refusing an application for writ of error, the Supreme Court held that the asserted cause of action was a tort, and that the settlement with one tort feasor (the railroad) constituted a release of the other since "the right to pursue the other tort feasor" was not reserved in the settlement agreement. There was no assumption of liability by the City for the acts of the railroad. 121 Tex. 553, 50 S.W.2d 1090. We may assume, arguendo, correctness of the contention as related to tort liability. The cause of action here asserted is not for a tort, but for an injury by an authorized agency of the State, which the State had a legal right to inflict, such right being restricted only by the following provisions of Art. 1, § 17, Texas Constitution, which were specially pleaded by the Pieratts:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person."

█ That the acts complained of were actually performed by Uvalde is of no importance. They were done in the proper performance of a contract the Department had authority to make, and under direct supervision of its engineers, and were essential to the execution of that contract. They were therefore the acts of the Department, and consequently of the State,

the same as if they had been actually performed by officials or employees of the Department, in the discharge of properly delegated duties. See State v. Malone, Tex.Civ.App., 168 S.W.2d 292 error refused, W.M., where the work (a State aid project) was done by a construction company under contract with the county, in accordance with plans of the Department and under supervision of Department engineers. Liability of the State was upheld in the Malone case and in the prior case of State v. Hale, Tex.Civ.App., 96 S.W.2d 135, affirmed on this point in 136 Tex. 29, 146 S.W.2d 731, wherein the State's immunity from tort liability was fully recognized. Our conclusion is that the contract between the Department and the City effectually bound the latter to discharge any liability the State might incur in executing the contract. The only remaining question is whether the alleged cause of action asserted a liability against the State. This question resolves into the concrete issue whether injury to an established business arising from loss of profits due to traffic interference necessarily incident to construction, improvement or reconditioning of a State Highway upon which the property upon which the business is conducted abuts, constitutes damage to property for public use within the meaning of the above constitutional requirement that it be adequately compensated.

Where this precise question has been adjudicated by courts of last resort in other American jurisdictions it is held by the great weight of authority that such damage is not to the property but to the business conducted thereon, and is not recoverable under constitutional provisions similar to that here invoked. These authorities are collated and digested in two A.L.R. notes: vol. 68, p. 340, and vol. 98, p. 956. Of course, there is involved no actual invasion (taking) of the property and no physical injury (damage) to the property itself. The damage is to the business conducted on the property, to which business the property is adapted and devoted; that is damage by reason of impairment of the use of the property.

In this jurisdiction the question is ruled by the holding in Hart Bros. v. Dallas County, Tex.Com.App., 279 S.W. 1111, 1112. The opinion in that case was by the Commission of Appeals (Judge Ocie Speer writing) and was not adopted by the Supreme Court. However, the only question decided was that necessarily involved in the here pertinent holding, the approval of which holding was therefore essentially implicit in the Supreme Court's adoption of the judgment recommended by the Commission. That was a suit against the county for loss of profits to an established business (inter alia) conducted by a tenant upon a leasehold, such loss resulting from temporary obstruction of the highway upon which the leasehold abutted during a highway reconstruction period. The trial court gave judgment covering several specified items of lost profits. This judgment was reversed by the Court of Civil Appeals, 271 S.W. 408, upon the holding that such damages were not recoverable, the full measure of damage being the difference in value of the leasehold immediately after the reconstruction below what it was immediately before. This judgment was reversed and that of the trial court affirmed upon the holding that the loss of profits was recoverable under the above constitutional provision; after quoting which the opinion reads:

"This is broad enough to include defendant in error as a subdivision of the state with the powers of eminent domain (see Dallas County v. Barr, Tex.Civ.App., 231 S.W. 453), and to protect plaintiffs in error in the particular wherein they have recovered, if their business be considered as 'property.'

"Plaintiffs in error do not show a case of an actual taking of their property or of the complete destruction thereof, so as to fix their damages once for all in the value of the property taken or destroyed, but rather they make a case of a temporary interference for a definite time, with their established business, whereby they sustained a loss of profits and were compelled to make necessary expenditures, in amounts easily ascertainable. Their lease has not been rendered worthless nor their business finally destroyed. They continued to use their property as adapted to the changed conditions. Under those circumstances there is no doubt but that they are entitled to recover damages in such sum as will compensate them for the loss of the profits they would have derived, and the expenditures they were required to make, during the temporary interruption of their business. Otherwise they would not get full compensation for their loss."

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.