**MILAM COUNTY v. AKERS.**

No. 9434.

Court of Civil Appeals of Texas. Austin.

May 31, 1944.

Rehearing Denied June 21, 1944.

Ed Gunn, Wallace & Wallace and E. A. Wallace, all of Cameron, for appellant.

Camp & Camp and E. A. Camp, all of Rockdale, for appellee.

McCLENDON, Chief Justice.

This is a condemnation suit brought by the County (Milam County) against Akers to condemn certain designated portions of his farm situated just east of Cameron for the purpose of widening, rerouting in part and reconstructing State Highways Nos. 77 and 36. The appeal is by the County from a judgment, upon a special issue verdict, assessing the damages at $5,650, of which $800 was the value of the land actually taken and $4,850 damages to the rest of the farm. The issues on appeal relate only to the latter item; to a clear understanding of which the following statement of the evidence, viewed most favorably in support of the judgment, will suffice:

In 1924 the County acquired by deed from its then owners a right-of-way 100 feet wide across the farm, upon which was constructed the two highways which were coincident at this point. The farm comprised 217 acres, of which 124.8 were north and 92 south of the highway. It was bounded on the east by Little River, which the highway crossed on an iron bridge. The greater portion of the farm lay in the river bottom and was subject to frequent overflows. A small portion on its western side nearest Cameron was on high ground, part of which was not subject to overflow from the highest known flood, that of 1921. The highway traversed both the high ground and bottom land. Akers bought the farm in 1938 for $12,500 at which time it was not greatly improved. He was extensively engaged in buying, fattening and shipping cattle to market; and made this farm his headquarters in that business. In 1941 he erected a residence and made other improvements thereon, consisting of barns, sheds, lots, dipping vats, scales, loading chutes, etc., essential to his business. These were all located on the high ground; the residence and most of the other improvements being north and some of the barns and lots being south of the highway. The residence (costing $7,000) had eight rooms, was of frame construction upon a concrete foundation, with three concrete floored porches. It was in the center of a yard about 100 feet square, enclosed by a plank fence supported by iron posts set in a concrete curbing. The front fence was set back some 16 feet from the north line of the highway right-of-way, and on this strip Akers had constructed a private graveled driveway for convenience in parking off the highway; which was practically on a level with his front yard, except for a drainage ditch between the roadway and the north right-of-way line. A graveled driveway also extended along the east side of his yard fence from the highway to his garage at the N.E. corner of the yard and facing south. There was also easy access by graveled driveways to his loading chutes, scales, etc., to the east of his residence, and cattle could be driven readily across the highway from one portion of the farm to the other. The highway across the bottom was constructed partly on dumps and partly upon three trestles. The latter were not fenced off from the farm, and at places were high enough for cattle to pass at will from one side of the highway to the other. This in general outline was the pertinent situation early in 1943 when the County instituted this proceeding at the "direction and request" of the State Highway Commission. All of the legal formalities were complied with, agreement could not be reached with Akers regarding his damages, commissioners were appointed, who, after notice and hearing, filed their award on March 19, 1943, assessing the damages at $3,000, of which $800 was the value of the land actually taken and $2,200 damages to the rest of the farm. The County filed objections to this report March 23, 1943, at the same time depositing $3,000 in the registry of the court. Akers filed no formal exceptions to the award, but on September 25, 1943, filed an elaborate answer to the petition in condemnation and the County's objections to the award, in which his damages were set out with much particularity. The new highway right-of-way was 120 feet wide, it crossed the river on a proposed new iron bridge just south of the existing bridge. The piers of the new bridge had been constructed at the date of trial. From the bridge to a point about 1,800 feet east of Akers' house, where the north line of the new intersected the south line of the old right-of-way, was a narrow strip of about 1.3 acres between the old and new highways. From this intersection the north line of the new is along the old right-of-way to a point about 180 feet east of Akers' yard fence, where it intersects the old north line, and cuts off a triangular strip widening until it reaches Akers' west line, the

north line of which triangle is within a few inches of the curbing supporting the yard fence. All of the private driveway in front of the house is thereby included in the new highway. The south line of the new highway does not intersect that of the old until a point west of Akers' land is reached. Thus the new highway embraces all of the old highway, with additional strips of varying width (but aggregating 20 feet) on either side, from Akers' west line to a point 180 feet east of his yard fence. From that point eastward the common right-of-way diminishes and vanishes altogether at about 1,600 feet. The original plans called for entire reconstruction of the highway. The elevation of the bridge was raised, and from there entirely across the bottom the roadway was to be upon a trestle supported by concrete piers. From the west end of this trestle the new highway was to be on a dump. The grade of the new road was to be slightly down from the bridge westward. In front of Akers' house the top of the dump would be five feet above the old roadway, about a foot above his front yard fence, and practically on a line with his front window-sills. The dump would increase to the east and would be some seven or eight feet high in front of his barns. The highway engineer testified that the original plans had been changed, resulting in lowering the grade of the dump in front of Akers' house some two feet. However, the plans were not final and were subject to further change. The evidence showed without conflict that the contemplated new construction could not be erected upon the old right-of-way. The damages shown resulted from widening the highway in front of the house, and raising the grade of the highway to the contemplated elevation. They consisted in depreciation in market value of the rest of the farm for the uses to which it was adapted and put, the elements of which arose in the main from cutting off the space between the front yard and the old highway; decreasing the distance between the residence and highway; raising the grade in front of the residence, garage and other improvements; to obviate the inconvenience and other deleterious effects of which would require an entire rearrangement of the various driveways giving access from the highway to his residence and other improvements, and the removal to suitable locations of such structures and improvements.

The County has briefed the case under ten points predicated upon thirteen assignments of error in its amended motion for new trial. The substance of these may be reduced to the following contentions:

1. In so far as the new construction was built upon portions of the old right-of-way (and this was true of the greater portion of the dump) there could be no recovery for consequential damage to the farm, because the County had acquired the old right-of-way, which carried with it the right to make any reasonable improvement, or change of grade thereon. Akers had built his residence and other improvements with knowledge of that right, and with constructive notice that it might be exercised at any time the County should see fit. This proposition is presented in several ways in the assignments of error,— by exception to pleadings (1 and 3); by exceptions to the charge and requested special charge and issue (4, 5, 6 and 7); by objection to evidence of fourteen witnesses (8); and by objection to the verdict (10).

2. Injury to Akers' business was not a recoverable item of damage (2).

3. Evidence of the cost of the residence, and of its removal to another location was improperly admitted (9 and 10A).

4. The verdict was excessive (11).

5. Since Akers filed no exceptions to the award, his recovery could not exceed its amount, $3,000 (12).

The first proposition is based upon the following generally accepted rule: "One of the public rights in a highway is that of changing the grade as the public necessity and convenience may from time to time require; and consequently, as a general rule, in the absence of a constitutional or statutory provision to the contrary, a municipality or governmental agency is not liable to an abutting owner for consequential damages resulting from the grading or changing of the grade of the street or highway in front of his premises, even if he owns the fee of the land within the highway." 18 Am.Jur., p. 841, § 211. This rule applies, regardless of the method of acquisition of the right-of-way—whether by purchase, condemnation, donation, or prescription. The application of this rule has in many instances worked with great harshness (see State v. Brewer, 141 Tex. 1, 169 S.W.2d 468),

relief against which is provided in the constitutions and statutes of some jurisdictions. The rule persists in this state, without such modification. Two recent applications of the rule by the Supreme Court are found in the Brewer (above) and Pieratt (LaGrange v. Pieratt, Tex. Sup., 175 S.W.2d 243) cases.

We are not here concerned with the rules announced in cases where there has been a diversion of surface waters (Wichita Falls v. Mauldin, Tex.Com.App., 39 S.W.2d 859; State v. Hale, Tex.Civ.App., 96 S.W.2d 135, affirmed on this point 136 Tex. 29, 146 S.W.2d 731), or a negligent, "unnecessary or improper" street construction by a municipality (City of Houston v. Bartels, 36 Tex.Civ.App. 498, 82 S.W. 323, 469).

■ The test apparently applied in the Brewer case is whether the change in the highway construction was one reasonably to be anticipated at the time the right-of-way was acquired; and this in turn is dependent upon whether the improvements were "made in conformity with reasonable regulations for the public safety." All damages arising from such improvements are regarded as reasonably within contemplation in the acquisition of the right-of-way, are proper items to be considered in estimating the damages in condemnation proceedings, and are deemed included in the price paid or damages awarded in the right-of-way acquisition.

■ The correctness of these principles is conceded by Akers. His contention is that the widening, rerouting and contemplated new construction constituted an additional servitude upon his property, for which compensatory consequential damages were recoverable. In this we agree. As above stated, the evidence showed without conflict that the new widened and partially rerouted right-of-way was essential to the contemplated new construction; the objectives of which could not be accomplished on the old right-of-way. Under these circumstances the new construction clearly was not within reasonable contemplation at the time the old right-of-way was acquired. The situation is analogous to those in which a road is changed from one class to another. To paraphrase the language of Associate Justice Stayton in Bounds v. Kirven, 63 Tex. 159: The new construction, necessitating the widening and rerouting, "imposes burdens on the land-owner which" the existing right-of-way "does not."

Other cases to the same effect are Wooldridge v. Eastland Co., 70 Tex. 680, 8 S.W. 503; Llano Co. v. Scott, 2 Tex.Civ.App. 408, 21 S.W. 177; Parker County v. Jackson, 5 Tex.Civ.App. 36, 23 S.W. 924.

The proper test here is whether the newly acquired right-of-way imposes burdens on the abutting property which did not exist under the old right-of-way. The fact that some, or even all of the new construction actually rests upon the old right-of-way is not controlling. When such construction is not feasible or is impractical upon the old right-of-way, and the new acquisition is essential to it, clearly an additional burden and servitude is created; for which compensatory consequential damage is recoverable.

The assignments upon which the first contention is predicated are overruled.

■ The second contention is overruled upon the authority of Hart Bros. v. Dallas County, Tex.Com.App., 279 S.W. 1111; Pieratt v. LaGrange, Tex.Civ.App., 171 S.W.2d 377, approved as to this point, Tex. Sup., 175 S.W.2d 243. The assignment upon which this contention is based complains of the overruling of an exception to Akers' answer setting forth the injury inflicted by the new construction upon his cattle business. The injury was not asserted as a separate item of damage but only as affecting the market value of the farm for the uses to which it was adapted and being put. As such it was a proper subject of pleading and proof.

■ The same is true with reference to evidence of the cost of the residence and of its removal to another location (contention 3, above). These were matters having evidentiary bearing upon the issue whether and to what extent the market value of the farm had been depreciated by the new highway; the widening, rerouting and reconstruction of the old. They did not constitute the measure of damage, which was the depreciation in market value, but were proper elements for consideration in arriving at that measure. This subject is fully treated with review of authorities in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 195 and 979. The point is too well settled to require elaboration.

The contention that the verdict was excessive is predicated upon the fact that a large part of the proposed new construction would be placed upon the old right-of-way,

for which no damages were recoverable; and since such damages were necessarily included in the amount of the verdict, it was to that extent excessive. If the premise that no damage was recoverable for any construction which might be placed upon the old right-of-way were correct, the asserted conclusion would follow. We have fully considered this contention under contention 1, above; and for the reasons there given it is also overruled.

 The fifth and last contention is predicated upon the County's construction of Sections 6 and 7, Art. 3266, Vernon's Ann.Civ.St. which read:

"6. If either party be dissatisfied with the decision (of the commissioners), such party may within ten days after the same has been filed with the county judge file his objection thereto in writing, setting forth the grounds of his objection, and thereupon the adverse party shall be cited and the cause shall be tried and determined as in other civil causes in the county court

"7. If no objections to the decision are filed within ten days, the county judge shall cause said decision to be recorded in the minutes of his court, and shall make the same the judgment of the court and issue the necessary process to enforce the same."

The contention is that Akers could recover only to the extent of the award of the commissioners because he filed no objection thereto as provided by Sec. 7. The exact point seems not to have been previously decided; but we are clear in the view, both from the wording of these sections and prior constructions thereof, that the point is not well taken. The two sections, taken together, clearly provide for a judgment of the county court, upon trial, Sec. 6, or upon the award, Sec. 7. If neither party files objection within the time prescribed, then it becomes the mandatory duty of the county judge to render judgment thereon. If either party files objection within the stated time, the adverse party must be cited and the cause tried "as in other civil causes in the county court." This language clearly calls for an original or "de novo" trial, and effectually does away with the award altogether. It is not even admissible in evidence upon the issue of damages. Crystal City & U. R. v. Boothe, Tex.Civ.App., 126 S.W. 700. The filing of objection by either party (here by the County) converted the entire proceeding into a cause of action pending in the county court to "be tried and de-termined as in other civil causes" therein. See Fitzgerald v. Dallas, Tex.Civ.App., 34 S.W.2d 682, error refused; Houston v. Susholtz, Tex.Civ.App., 22 S.W.2d 537, affirmed, Tex.Com.App., 37 S.W.2d 728, 729. In the latter case (22 S.W.2d 537, 539) it was held with reference to the procedure prescribed in Sec. 6: "At least by analogy to like appeals from justice courts, it would seem to follow * * * that the perfection of this resort from the commissioners' award to the county court vacated the action of the lower body and gave to the proceeding as it then stood in the intermediate court the same status as if it had been originally commenced there." This construction clearly follows from the plain language of the two sections and calls for overruling the contention involved.

The trial court's judgment is affirmed.

Affirmed.

## On Appellant's Motion for Rehearing.

 In its motion for rehearing the County contends that under the pleading and proof damages were sought and recovered "arising from other causes * * * not within the statute," Art. 3265; the amount of which was beyond the constitutional jurisdiction of the county court ($1,000); and that as to such damages the court was without jurisdiction. This contention is based upon the assertion that aside from the statutory damages consisting of the value of the land actually taken and the decrease in value of the rest of the tract "by reason of such condemnation," Akers' cross-action "sought additional damages based upon allegations that the right-of-way already owned would be used in conjunction with the land condemned, whereby other elements of damages than fixed by the statute were relied upon to recover other and independent damages." What such additional damages consisted of is not more specifically pointed out than in this quotation from the motion. The county court has exclusive jurisdiction of condemnation proceedings, and is not limited therein by the amount in controversy. Vogel v. State, Tex.Civ.App., 50 S.W.2d 348; 16 Tex.Jur., p. 718, § 107, and note 8. It is, of course, true that only such damages as are authorized by the statute may be recovered in such proceedings; and this regardless of whether such additional damages be within the amount of the court's general jurisdiction. The damages here sought and recovered were clear-

ly those arising from the condemnation, namely the depreciation in market value of the land (other than that taken) "by reason of the condemnation." The fact that the new embraced a part of the old right-of-way has nothing to do with whether the damages sought arose from the condemnation, except as regards the issue whether they were embraced in the right-of-way deed of Akers' predecessor in title. If they were so embraced (as the County contends) then they were not recoverable, for the reason that they had already been compensated for. We endeavored to make it plain in our original opinion that they were not so embraced, for the reason that under undisputed evidence the new construction contemplated and that which the widened and rerouted right-of-way admitted of as reasonably in contemplation (Brewer and Pieratt cases, above) was not feasible or practicable on the old 100-foot right-of-way. These damages, therefore, resulted exclusively from the additional servitude imposed by the condemnation.

The motion is overruled.

Overruled.