

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 5, 1996

The Honorable Mike Driscoll
County Attorney
Harris County
1001 Preston, Suite 634
Houston, Texas 77002-1891

Opinion No. DM-420

Re:  Authority of the Harris County Flood Control District to provide for recreational and environmental improvements under Senate Bill 586, Act of May 21, 1993, 73d Leg., R.S., ch. 409, 1993 Tex. Gen. Laws 1711, 1711 (RQ-798)

Dear Mr. Driscoll:

You ask about the authority of the Harris County Flood Control District (the "district" or "flood control district") under a 1993 amendment[1] to its 1937 special law to provide for recreational and environmental improvements. The district was created under the 1937 law to accomplish the purposes of section 59 of article XVI of the Texas Constitution[2]

---

[1]*See* Act of May 21, 1993, 73d Leg., R.S., ch. 409, 1993 Tex. Gen. Laws 1711, 1711.

[2]Article XVI, section 59 provides in part:

> (a)  The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each  and all hereby declared public rights and duties; and the Legislature shall pass all laws as may be appropriate thereto.

> (b)  There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law.

> (c)  The Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of this amendment, and all such indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be

including the control, storing, preservation and distribution of the storm and flood waters, and the waters of the rivers and streams in Harris County and their tributaries, for domestic, municipal, flood control, irrigation and other useful purposes, the reclamation and drainage of the overflow land of Harris County, the conservation of forests, and to aid in the protection of navigation on the navigable waters by regulating the flood and storm waters that flow into said navigable streams.

Act of May 10, 1937, 45th Leg., R.S., ch. 360, § 1, 1937 Tex. Gen. Laws 714, 714. Under the 1937 law, the district, whose governing body is the Harris County Commissioners Court, is authorized, with voter approval, to issue bonds and to collect taxes to service them. *Id.* §§ 1, 3-7, at 714, 716-18. A 1947 law authorized the district to impose, with voter approval, a maintenance and operations tax as well. Act of June 4, 1947, 50th Leg., R.S., ch. 407, 1947 Tex. Gen. Laws 952, 952.

The 1993 legislation you ask about, Senate Bill 586, provides in pertinent part:

Recreational and Environmental Improvements

(a) The Harris County Flood Control District, in connection with flood control facilities and projects, may provide for or participate in the development, operation, or maintenance of:

(1) linear parks along drainage courses maintained and operated by the district;

(2) hike and bike trails;

(3) nonenclosed recreational facilities, including game fields and playgrounds; and

---

(footnote continued)

issued under such regulations as may be prescribed by law and shall also, authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds; and also for the maintenance of such districts and improvements, and such indebtedness shall be a lien upon the property assessed for the payment thereof; provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted.

A new subsection (f) was added to article XVI, section 59 in 1978 to specifically provide that districts may engage in fire-fighting activities and issue bonds for such purposes. *See* H.R.J. Res. 42, § 2, 65th Leg., R.S., 1977 Tex. Gen. Laws 3374 (1978).

(4) other environmental improvements, including public or private nature reserves or wildlife habitat restoration and improvement projects.

(b) In order to carry out the purposes of Subsection (a) of this section, the district may execute contracts or enter into cooperative agreements with:

(1) the federal government, a federal agency, or a federally sponsored organization;

(2) the state, a state agency, a political subdivision of the state, or any unit of local government;

(3) a nonprofit corporation or foundation;

(4) a private individual or corporation; or

(5) a public service organization or neighborhood organization.

(c) The district may use property, rights-of-way, easements, or other land owned or managed by or otherwise available to the district for purposes of Subsection (a) of this section.

(d) The use by the district of any property owned or managed by or otherwise available to the district for the purposes of Subsection (a) of this section is determined to be consistent with the use of that property for flood control purposes if the improvements do not significantly impede the flow of floodwaters or reduce the carrying capacity of the drainage facilities of the district.

. . . .

(f) The district may spend its own funds for the purposes of this section. The capital cost to the district of parks, trails, facilities, and improvements under this section may not exceed five percent of the total cost of the flood control facilities and projects with which the improvements are associated. This section does not limit the expenditure of funds from sources other than taxes collected by the district.

Act of May 21, 1993, 73d Leg., R.S., ch. 409, § 1, 1993 Tex. Gen. Laws 1711, 1711-12.

I.    **The District's Authority to Use Tax and Tax Bond Funds to Make Recreational Improvements.**

You ask first:

> Does Harris County Flood Control District have the authority, by virtue of Senate Bill 586, to use tax and bond revenues for development and maintenance of recreational improvements described in the statute without an election approving expenditures for such purposes?

**A. Judicial and Attorney General Opinions.**

We begin our analysis with a review of relevant judicial and attorney general opinions. A 1952 Texas Supreme Court opinion, *Deason v. Orange County Water Control & Improvement District No. 1*, 244 S.W.2d 981 (Tex. 1952), ruled that despite specific authorization in the applicable general law statutes a water control and improvement district did not have the authority to expend bond funds for fire-fighting equipment since the constitutional authorization for the district -- article III, section 52 and article XVI, section 59 -- did not refer to, and the voters in adopting the amendments' language would not have contemplated, the district owning and operating such equipment:

> Both constitutional amendments specify the circumstances and purposes for which water control and improvement districts may be organized and the Legislature is without power to add to or withdraw from the circumstances and purposes specified.

*Deason*, 244 S.W.2d at 984.

Two years later the statute at issue in *Deason* was again before the supreme court in *Parker v. San Jacinto County Water Control and Improvement District No. 1*, 273 S.W.2d 586 (Tex. 1954). The plaintiffs in *Parker* sought to enjoin the district from spending tax bond funds to install a sanitary and storm sewer disposal system as specifically authorized by a statute. They argued, citing *Deason*, that the sewage system was not within the constitutional authorization for the district. The court disagreed:

> Plaintiffs' attack upon the statute fails because the power to erect a sewerage disposal plant is clearly within Sec. 59a, Art. 16, Texas Constitution. The water brought into the area is not destroyed by use but must be returned to the hydrological cycle. The Conservation Amendment to our State Constitution would certainly permit the purification of water before it returns to the groundwater table and the river system. The protection of the purity of the waters of the State is a public right and duty under the Conservation Amendment. . . .

*Parker*, 273 S.W.2d at 586.

Specifically with regard to a district's authority to provide recreational facilities, Attorney General Opinion H-491 addressed the constitutionality of provisions in section 54.201 of the Water Code:

> (a) A district shall have the functions, powers, authority, rights, and duties which will permit accomplishment of the purposes for which it was created.
>
> (b) A district is authorized to purchase, construct, acquire, own, operate, maintain, repair, improve, or extend inside and outside its boundaries any and all works, improvements, facilities, plants, equipment, and appliances necessary to accomplish the purposes of its creation, including all works, improvements, facilities, plants, equipment, and appliances necessary to accomplish the purposes of its creation, including all works, improvements, facilities, plants, equipment, and appliances incident, helpful, or necessary to:
>
> . . . .
>
> (7) provide parks and recreation facilities for the inhabitants of the district.

Noting the supreme court's holdings in *Deason* and *Parker*, and citing Attorney General Opinion C-436, which had found that recreational purposes would "undoubtedly" be included in the authority granted by article XVI, section 59, the opinion concluded:

> Where, as here, it is the stated purpose of the constitutional amendment to provide among other things for the conservation and development of natural resources including the development of forests and storing of the waters of the State's rivers and streams for all useful purposes, we do not believe that we can say, as a matter of law, that the use of these resources such as waters and forests, once developed and conserved, for recreational purposes was not within the contemplation of the people who adopted the amendment.

Attorney General Opinion H-491 (1975) at 4.

Subsequently, a 1980 court of appeals opinion specifically found that provision of recreational facilities under section 54.201, at least the ones at issue -- a community center, swimming pools, tennis courts and a clubhouse -- did not further a purpose of article XVI, section 59. *Harris County Water Control and Improvement Dist. No. 110 v. Texas Water Rights Comm'n*, 593 S.W.2d 852 (Tex. Civ. App.--Austin, 1980 no writ) (hereinafter "*Harris County WCID #110*"). Although the court stated that the "sole question is whether the proposed recreational facilities are permissible pursuant to acts of the Legislature, and not whether an act of the Legislature is valid," *id.* at 855, it concluded

that the proposed facilities "do not further a purpose of Section 54.012 of the Water Code or of Article XVI, § 59 of the Texas Constitution." *Id.*

Soon thereafter, in Attorney General Opinion MW-313, this office, addressing whether a river authority could provide park and recreational facilities, noted that the *Harris County WCID #110* decision had "apparently created doubts as to whether the river authorities of this state can construct recreational facilities on reservoirs." Attorney General Opinion MW-313 (1981) at 2. It distinguished *Harris County WCID #110* as follows:

> The Harris County W.C.I.D. #110 opinion prohibited construction of a complex of recreational buildings and facilities which were unrelated to the constitutional purposes of the district. It is our understanding that the facilities you propose to build are related to a relatively minor portion of the total reservoir project and serve to promote the full use and enjoyment of the reservoir by the public. We feel that the improvements you propose are ordinary and necessary to the proper control, management, and regulation of public reservoirs and lakes, and are in furtherance of the constitutional purposes of "the conservation and development of all natural resources of this State, including the control, storing, preservation, and distribution of . . . the water of its rivers and streams for irrigation, power and *all other useful purposes.*" Tex. Const. art. XVI, § 59(a).

*Id.* at 4. Attorney General Opinion MW-313 did not refer to Deason.

Some years later, this office dealt with the question whether a chapter 54 municipal utility district could purchase real property in the district with district tax money for use as a public park pursuant to 1985 amendments to chapter 54 of the Water Code in Attorney General Opinion JM-1173. The amendments, "in apparent anticipation of constitutional challenge," Attorney General Opinion JM-1173 (1990) at 5, state that they provide "complete authority to a municipal utility district to develop and maintain recreational facilities," that no constitutional inhibition prohibits the legislature from authorizing such district to develop and operate such facilities, and that the "legislative power is adequate to support the enactment of this subchapter without reference to any specific constitutional authorization." Water Code § 54.771. Quoting the language set out above from Attorney General Opinion MW-313, Attorney General Opinion JM-1173 stated:

> Taken together, the 1980 *Harris County Water Control and Improvement District* case and the 1981 attorney general's opinion teach that the provision of facilities for recreation and pleasure is not among the constitutional purposes for which water districts may levy and expend ad valorem taxes, but that the provision of recreational

> facilities may be considered as a proper secondary activity for a
> district if furnishing them promotes a constitutional purpose.

Attorney General Opinion JM-1173 (1990) at 6. Stating that "the fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers," *id.* at 7 (citing *Deason*, 244 S.W.2d at 981), this office went on to opine that "the constitution contains no language which would support a holding that the people, in enacting article XVI, section 59, contemplated that a municipal utility district created for the purpose of conserving and developing the natural resources of the district would have the power to use taxes to provide parks and recreation facilities unrelated to the conservation and development of natural resources." *Id.* The opinion concluded that the municipal utility district could "not use taxes to purchase real property for the independent purpose of having it used as a public park and developed recreational area, and that the language of subchapter I of chapter 54 is not to be given a reading that would contradict or overrule the construction given article XVI, section 59, of the Texas Constitution by the Supreme Court of Texas." *Id.* at 7-8.

A few months later, Attorney General Opinion JM-1259 responded to a request for clarification of Attorney General Opinion JM-1173 regarding whether "a municipal utility district created pursuant to Article XVI, section 59 . . . and operating under chapter 54 of the Texas Water Code" could "use revenue notes to finance the acquisition of park land and park facilities." Attorney General Opinion JM-1259 (1990) at 1. Attorney General Opinion JM-1259 characterized Attorney General Opinion JM-1173 as "confined to the use of tax monies" for the recreational facilities in question there, *id.* at 3, and reaffirmed the opinion as thus construed. It then spoke of the *Deason* holding as follows:

> [G]iven the context of the narrow question before the court in
> *Deason, i.e.,* the authority of a district to issue its bonds, we think it
> a more reasonable reading of the court's teaching that the legislature
> may only grant to a district the authority to tax and incur
> indebtedness as specified by section 59(c) of article XVI when such
> authority will be used in furtherance of a constitutionally enumerated
> purpose.

*Id.* at 4. Reading *Deason* as standing for the proposition that the legislature could not extend the purposes for which taxes and tax bonds could be used beyond those set out in article XVI, section 59, Attorney General Opinion JM-1259 concluded that the district could use, as distinct from tax or tax bond funds, revenue notes payable with fees charged pursuant to specific statutory authorization in Water Code section 54.774 to acquire recreational facilities. *Id.* at 10-11.

**B. Application of Precedent to Query.**

*Deason* and *Harris County WCID #110*, as construed in Attorney General Opinions JM-1173 and JM-1259, restrict the flood control district from expending district

tax or tax bond funds for Senate Bill 586 recreational purposes. Although *Deason* did not deal with recreational facilities, it did, as construed by these attorney general opinions, hold that an article XVI, section 59 district was without authority to spend tax or tax bond funds for purposes not authorized by that constitutional provision. *See Deason*, 244 S.W.2d at 984; Attorney General Opinions JM-1259 (1990) at 4-5, JM-1173 (1990) at 1, 7. *Harris County WCID # 110* in turn stated, although it was perhaps not necessary to the *ratio decididendi* otherwise announced there, that recreational purposes -- at least the community center, three swimming pools, four tennis courts, and clubhouse at issue -- were not among the purposes of a district created pursuant to article XVI, section 59. *Harris County WCID #110* and *Deason* thus suggest that such recreational purposes are not included in the article XVI, section 59 authorization on which the district could expend tax or tax bond funds. As the objection to such expenditures under these cases is constitutionally based -- the absence of constitutional authorization for such uses of tax and tax bond funds -- the restrictions cannot be overcome by a statute, such as Senate Bill 586, purporting to authorize such expenditures. Nor would an election to approve such expenditures overcome this constitutional impediment.

On the other hand, the *Parker* case suggests that environmental measures authorized by Senate Bill 586 would be more likely to be found within the purposes authorized by article XVI, section 59 such that the district would be constitutionally authorized to expend district tax and tax bond funds. We note, however, such environmental purposes as are authorized by the constitution would most likely be found to have already been within the district's authority under its statute prior to Senate Bill 586, given the broad purpose clause of section 1 of the special act quoted above. In that case the voters would most likely, we think, be deemed to have been on notice under the existing provisions, at the time they approved district taxes and tax bonds, that the proceeds might be used for such environmental purposes. In that case, there is no need for a new election to authorize the use of such funds for these purposes now. However, such environmental measures as are not within the contemplation of article XVI, section 59 may not now, under *Deason* and the other authorities cited above, be paid for with district tax and tax bond funds, even if the district purports to hold an election authorizing such expenditures, given the constitutional impediment to such use of the funds.

In any case, it is our opinion that while ultimate determination of whether the district is authorized to pursue a particular recreational or environmental project under Senate Bill 586 would depend on whether the particular project was within the constitutional purposes of a district under article XVI, section 59, recreational purposes under the statute would as a general matter be less likely and environmental purposes more likely to be found within such constitutional authority. Attorney General Opinions MW-313 and JM-1173 indicate that the test as to whether a particular project is within the constitutional authorization is whether it is independent of the purposes of the conservation amendment or, in contrast, a secondary activity which promotes a constitutional purpose. A project that is contrary to the purposes of the conservation amendment or is solely recreational in purpose would not be a permissible use of tax or

tax bond funds. The governing body of the district, the Harris County Commissioners Court, should make the requisite factual determinations, at least in the first instance, in accordance with this opinion.

## II.   The District's Authority to Use Easements for Recreational and Environmental Purposes.

You also ask:  "Does Harris County Flood Control District have the power, by virtue of Senate Bill 586, to use easements granted for flood control and drainage *prior to* the effective date of the statute for the purposes set out in the statute?" (emphasis added) and "Does Harris County Flood Control District have the power, by virtue of Senate Bill 586, to use easements granted for flood control, drainage, and recreational purposes *after* the effective date of the statute for the purposes set out in the statute?"   (Emphasis added).

We note at the outset that, in part because extraneous factual evidence as to the understanding of the parties could be relevant in their construction, this office refrains from attempting to construe contractual instruments such as those granting easements in attorney general opinions.  The test whether an easement acquired by a public body may be burdened with particular uses, such as the recreational uses provided for in Senate Bill 586, is whether the grantor could have reasonably contemplated such uses as within the easement at the time he granted it.  *City of Sweetwater v. McEntyre*, 232 S.W.2d 434 (Tex. Civ. App.--Eastland 1950, writ ref'd n.r.e.); *Milam County v. Akers*, 181 S.W.2d 719 (Tex. Civ. App.--Austin 1944, writ ref'd w.o.m.).  In addition, easements and other contracts are presumed to refer to the law in force at the time of execution.  14 TEX. JUR. 3D *Contracts* § 222 (1981).  Rights conferred thereunder may not be altered, substantively at least, by subsequent amendments to the law.  *Id.* § 222 at 388 (citing authorities).

We think it clear that Senate Bill 586 *recreational* uses of an easement would impose substantial additional burdens on a servient estate granted for flood control purposes -- that is, on use of the property by the general public.  Nevertheless, while we generally agree that easements granted for district purposes before the adoption of Senate Bill 586 would not include the right to use the property for Senate Bill 586 recreational purposes, we cannot say as a matter of law that an easement granted the district prior to Senate Bill 586 could not under any circumstances be construed to include the right to use the property for such recreational purposes.  For example, an easement might expressly grant to the district the right to use property for all present and future lawful purposes of the district.  Also, as suggested above, some recreational uses might be found to be within the district's constitutional authority as well as its statutory authority prior to the adoption of Senate Bill 586, in which case easement grantors prior to Senate Bill 586 could be found, on given easement language, to have been on notice that the easement would include the district's use of the property for such purposes.

Similarly, we cannot say as a matter of law that easements granted after the adoption of Senate Bill 586 necessarily include the right to use the property for Senate Bill 586 recreational purposes. Clearly, the terms of such easements could be expressly limited to purposes which do not include recreational activities, even where Senate Bill 586 was in force at the time of the grant. Thus, although easements granted for purposes of the district generally or even for flood control purposes after the adoption of Senate Bill 586 would, we believe, be more likely to be construed as contemplating use for Senate Bill 586 recreational purposes, ultimate determination of the scope of the easement granted would require construction of the particular easement and ascertainment of the intent of the parties, which we cannot undertake in the opinion process. Of course, in light of our discussion in response to your first question, if the particular recreational purpose in question is not one authorized by article XVI, section 59, an easement acquired with tax or tax bond funds could not, in any case, be used for such purpose.

With regard to environmental uses of an easement under Senate Bill 586, we again believe that ultimate determination whether an easement includes the district's right of use for such purposes would require construction of the particular easement. In accordance with our discussion in regard to your first question, however, we think it more likely in the case of environmental measures that such purposes would be found to be within the district's pre-existing authority under the constitution and statutes, and thus within the contemplation of the easement grantor, even where the easement was granted prior to the adoption of Senate Bill 586. Again, however, if particular environmental measures are found not to be within the authorization given by article XVI, section 59, an easement acquired with tax or tax bond funds could not in any case be used for such purpose.

## S U M M A R Y

The Harris County Flood Control District may not use tax or tax bond funds for recreational and environmental measures described in Senate Bill 586, Act of May 21, 1993, 73d Leg., R.S., ch. 409, § 1, 1993 Tex. Gen. Laws 1711, 1711-12, if the measures are not within the purposes of such a district as set out in article XVI, section 59 of the Texas Constitution, even if the district has an election purporting to authorize such expenditures. Recreational purposes under Senate Bill 586 are less likely to be found within the constitutional purpose of the district while environmental measures under the bill are more likely to be so found. A measure that is contrary to the purposes of the article XVI, section 59 or is solely recreational in purpose is not a permissible use of tax or tax bond funds. The Harris County Commissioners Court, the governing body of the district, should make the requisite factual determinations at least in the first instance.

Whether an easement held by the district may be used for Senate Bill 586 purposes depends ultimately on the contemplation of the parties at the time of granting. Easements acquired with tax or tax bond funds may not, however, be used for recreational or environmental purposes not within the constitutional authorization for the district in article XVI, section 59.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee