# THE STATE OF TEXAS ET AL V. W. S. HALE ET UX.

No. 7176.  Decided January 22, 1941.
(146 S. W., 2d Series, 731,)

*James V. Allred,* former Attorney General, *William McCraw,* former Attorney General, *T. S. Christopher, M. W. Burch, Curtis E. Hill,* former assistants Attorney Attorney General, and *John L. Green,* of Austin, for plaintiff in error.

The trial court should have sustained defendant's general demurrer because the special law authorizing this suit confined the action to one of negligence, and the State is in no event liable for the negligence or acts of malfeasance, misfeasance or nonfeasance of its officers, agents, or other representatives. Herring v. Houston Exch. Bank, 114 Texas 394, 269 S. W. 1031; Schillinger v. United States, 155 U. S. 163, 15 Sup. Ct. 85, 38 L. Ed. 108; Brooks v. State, 68 S. W. (2d) 534 in which writ of error was refused; Robins v. Limestone County, 114 Texas 345, 268 S. W. 915.

The trial court should have sustained the defendants' general demurrer because the construction of a great State highway is the performance of a governmental function, undertaken for the benefit of the general public in furtherance of convenience and intercourse, trade and commerce, involving

an appropriate exercise of the police power of the State, and there being no allegation in the petition that the Highway Commission acted arbitraarily or in any way abused its discretionary or statutory powers said petition was insufficient and if there were any harm done to plaintiffs' land it was a damage without an injury. Constitution of Texas Article 16, section 24; Stockwell v. State, 203 S. W. 109, 112; 9 Texas Jur., 511; 16 Texas Jur., 807.

*Mr. & Mrs. C. S. Bradley,* of Groesbeck, and *Polk Shelton,* of Austin, for defendants in error.

In construing statutes enacted directly by the Legislature it is the duty of the court to look to the entire act, including the caption, body of the act and the emergency clause, to determine the Legislative intent, and where an act authorizes parties to sue the State and the Highway Commission "by reason of the alleged negligence in construction of State Highway No. 43 in and through Leon County, Texas, * * * and especially by reason of the construction of said highway in such manner as to overflow and otherwise damage the lands of said Hale," the State becomes a litigant, the same as any other individual, and the language used in the statute does not limit the nature of the suit which may be brought against it. State v. Snyder, 66 Texas 687, 17 S. W. 110; Anderson v. Robison, 111 Texas 402, 229 S. W. 459.

*Fulbright, Crooker & Freeman, C. A. Leddy, Carl G. Sterns, Kraft W. Eidman* and *W. H. Marshall,* all of Houston, filed brief as amici curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

W. S. Hale and wife brought this suit in the District Court of Travis County against the State and the State Highway Commission, under the authority of Senate Bill No. 197, passed by the 42d Legislature at its regular session of 1931, chap. 72, p. 160, Special Laws of such session. The plaintiffs alleged damages by reason of overflow of their lands, which was caused by the State, through its State Highway Department, having built a temporary dump or roadbed on said Highway No. 43 across Keechi Creek bottom, situated near the town of Oakwood. The case was submitted to a jury on a special issue, and by virtue of the answers made by the jury, the trial court entered judgment for Hale and wife for $52,544.52, of which sum $37,800.00 was the amount of damages found by the jury.

and $14,744.52 was interest thereon at six per cent. per annum from September 1, 1927, to the date of the judgment, June 11, 1934. The judgment bears legal interest from its date. The State appealed the case to the Court of Civil Appeals at Austin, and the judgment of the trial court was reformed so as to award Hale and wife judgment for $37,800.00, together with interest thereon from September 1, 1927, at the rate of six per cent. per annum, and all costs,—and, as reformed, the judgment of the trial court was affirmed. 96 S. W. (2d) 135.

We shall designate the parties as plaintiffs and defendants, as they were in the trial court.

The farm owned by Hale and wife consisted of several tracts of land, aggregating 1400 acres, and was operated as a unit. It was located on the east bank of Keechi Creek, and north of and abutting upon an old road which crossed the creek bottom (about 3400 feet wide between the foothills) at this point. In July, 1927, the Highway Department began the construction of Highway No. 43 by building a temporary road, which was completed in August, 1927, consisting of a dump across the bottom, something like 2.5 to 5 or 6 feet above the natural surface of the adjacent land. In this dump two openings for drainage were left,—one 147 feet wide at the slough crossing, and the other 174 feet wide at the creek crossing. The old road was not substantially higher than the surface of the adjacent land. The permanent highway was constructed sometime later, with much wider openings at 440 and 680 feet, respectively. The damage sued for and recovered was for permanent injury to the land by reason of obstructing the natural flow of the flood waters which theretofore had passed unimpeded over the old roadway, thereby depositing large quantities of sand and other substances on the land, and impairing its productivity for use in growing crops. It was the theory of the defendants that the permission to sue was limited to injuries caused by the use of the temporary dump. The trial court adopted this theory in submitting the special issues to the jury.

In 1930 plaintiffs conveyed to the county, for highway purposes, a strip of land off the farm, containing approximately 13 acres, for $500.00 in cash. This strip was purchased in order to give necessary roadway width to Highway No. 43. The terms of the deed and the consideration expressed therein did not purport to settle or pay for damages to other land growing out of the construction of such highway.

The special issues and the jury's answers thereto read as follows:

"1. Do you find from a preponderance of the evidence that the land of the plaintiff W. S. Hale and his wife Mary D. Hale was injured by reason of the construction by the State of Texas of the temporary or old highway dump on highway No. 43 across the bottom of Keechi Creek adjacent to the south end of the Hale farm?" Answer: "Yes."

"2. Was the temporary or old highway dump on State Highway 43 constructed in such a manner as to cause overflow of the property or farm of plaintiffs in this case?" Answer: "Yes."

"3. How many acres of the land of W. S. Hale and his wife Mary D. Hale, plaintiffs in this case, were caused to be overflowed by the construction of the aforesaid dump on which sand or other substance injurious to the growing of crops were deposited?" Answer: "500 acres."

"4. (a) What was the reasonable cash market value, or if no reasonable cash market value, the intrinsic value, of the Hale farm per acre immediately before the construction of the temporary or old highway dump on highway 43 adjacent to the south end of the Hale farm in July, 1927?" Answer: "$75.00 per acre on entire farm."

"4. (b) What was the reasonable cash market value, or if no reasonable cash market value, the intrinsic value, of said property immediately after the completion of the aforesaid dump in August, 1927?" Answer: "$48.00 per acre on entire farm."

■ Defendants made no objections or exceptions to any portion of the charges or special issues, and no special charges or issues were requested by them. If the case presented other grounds of defense in favor of the State, under the state of this record they were waived. Therefore, we are confined to a consideration of the questions presented by this record.

Defendants in their brief filed herein state: "The petition * * alleges two separate causes of action, the gravamen of the first being an action sounding in tort or negligence, and the second being an asserted cause of action upon the ground of the taking or damaging of property applied to public use without compensation."

Since the Court of Civil Appeals has exhaustively stated the facts and the contentions made by the State in its brief, and copied them verbatim, we shall refer to the opinion of the

Court of Civil Appeals for such assignments, without copying them herein. We shall refer herein only to those assignments discussed in this opinion.

■ The defendants' first contention is that a general demurrer should have been sustained to plaintiffs' petition, because the law authorizing this suit confined the action to one of negligence.

The caption of the Act authorizing this lawsuit reads as follows:

"An Act giving to W. S. Hale and wife, Mary D. Hale, consent of the Legislature to sue the State of Texas and State Highway Commission for damages resulting from the construction of State Highway No. 43 through Leon County, Texas; and declaring an emergency."

The pertinent provisions of the Act are sections 1 and 2, which read:

"Section 1. That the consent of the Legislature of the State of Texas is hereby given to W. S. Hale and wife, Mary D. Hale, his executor, administrator and heirs to file and prosecute suit against the State of Texas and the State Highway Commission by reason of the alleged negligence in construction of State Highway No. 43 in and through Leon County, Texas, which construction was begun in July, 1927, and especially by reason of the constructing of said Highway in such manner as to overflow and otherwise damage the lands of said Hale. Said suit shall be brought in Travis County, Texas.

"Sec. 2. The State and said Commission may appeal from said judgment, as provided by law, without executing any bond, and, upon the final judgment being recovered against said defendants, the same shall be paid out of the State Highway Funds."

The Act authorized Hale and wife to sue the State and the Highway Commission for "damages resulting from the construction of State Highway No. 43 through Leon County * * and especially by reason of the constructing of said highway in such manner as to overflow and otherwise damage the lands of said Hale."

When this Act is considered as a whole, we think the Legislature intended to authorize plaintiffs to maintain any existing legal action had for damages sustained to their land by reason of the construction of Highway No. 43 through Leon County; and in order to maintain such suit it was essential that the State should give such consent. The object of con-

struing any statute is to ascertain the purpose for which it was enacted. When the caption and the material parts of the Act are read and considered together, they are broad enough to permit plaintiffs to file suit for any legally existing claim they have against the State growing out of the construction of Highway No. 43. We do not believe that the Legislature intended to do a useless thing, by authorizing plaintiffs to file a suit based on a ground that is prohibited by law. Nor do we believe that this Act should be given such a narrow and technical construction as would prohibit the filing of a suit for an existing legal claim arising from the construction of this highway. This contention is overruled.

■ Defendants also contend that, "The Court of Civil Appeals and the Trial Court should have sustained the general demurrer of plaintiffs in error because the construction of a highway was a governmental function, and there was no liability for consequential damages, absent allegations that the highway department was not acting under legal authority, or that its action was arbitrary or an abuse of its discretion."

Plaintiffs could maintain suit for their claim upon the ground that the construction of Highway No. 43 constituted a taking or damaging of their property for public use. The rule is now generally accepted that the State, in the absence of a constitutional or statutory provision therefor, is not liable for the torts of its officers or agents. State v. Brannan et ux., 111 S. W. (2d) 347 (writ refused) ; Brooks v. State, 68 S. W. (2d) 534 (writ refused) ; Adkinson v. City of Port Arthur, 293 S. W. 191 (writ refused) ; Barnes v. City of Waco, 262 S. W. 1081 (writ refused) ; 25 R. C. L., 407; 59 C. J., 194; 13 A. L. R., 1276.

The State, in the exercise of its sovereign power, has the unquestioned right to take, damage, or destroy private property for public use. Imperial Irrigation Co. v. Jayne, 104 Texas 395, 417, 138 S. W. 575, Ann. Cas. 1914B 322; City of San Antonio v. Grandjean, 91 Texas 430, 41 S. W. 477, 44 S. W. 476; State of Georgia v. Chattanooga, 264 U. S. 472, 68 L. Ed. 796, 44 Sup. Ct. 369; United States v. Jones, 109 U. S. 513, 27 L. Ed. 1015, 3 Sup. Ct. 346; 16 Tex. Jur., p. 560, sec. 2, and cases cited in footnotes.

However, the power of the State to take, damage, or destroy private property for public use is subject to the right of the owner thereof to adequate compensation for the taking, damaging, or destroying of such property. Article 1 (Bill of Rights), sec. 17, of the Texas Constitution, provides: "No person's prop-

erty shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money."

■ The law is now settled in this State that the State, in the exercise of its power to take or appropriate private property for public use, is in the same position, and is governed by the same rule, as railroads, counties and other subdivisions of the State, and corporations, to which it has delegated power of eminent domain. 16 Tex. Jur., p. 567, sec. 7, and cases cited in footnotes.

The language used in Section 17 of Article 1 of the Constitution, supra, which says that no person's property shall be taken or damaged for public use without adequate compensation being made, has no exceptions or limitations attached thereto. It is a clear, definite statement of the rule which prevails in this State, which controls all the departments of the State Government; and the liability for adequate compensation for private property taken or damaged for public use is not based upon the ground that the act of taking or damaging such property was done negligently or intentionally. The true test is, did the State intentionally perform certain acts in the exercise of its lawful authority to construct such highway for public use which resulted in the taking or damaging of plaintiffs' property, and which acts were the proximate cause of the taking or damaging of such property.

Within certain constitutional limitations, the Legislature has exclusive control over public roads and highways in this State. The right to establish and build highways rests primarily with the Legislature, and such power may be delegated to some other agency as it may determine. Aransas County v. Coleman-Fulton Pasture Co., 108 Texas 216, 191 S. W. 553; Delta County v. Blackburn, 100 Texas 51, 93 S. W. 419, 422; Robbins v. Limestone County, 114 Texas 345, 268 S. W. 915; Section 52 of Article 3 of the Constitution of Texas.

That public roads belong to the State, and that the State has full control and authority over same, is now well settled. Travis County v. Trogdon, 88 Texas 302, 31 S. W. 358; Robbins v. Limestone County, supra.

The State has created a Highway Commission, and has placed under its direct and exclusive control the management of its highway system. Vernon's Annotated Civil Statutes, Articles 6673, 6674q-4, 6674q-5. The State has vested in the

highway Commission full authority, and charged it with the duty to designate, lay out, and construct public highways. It has the right, as the agent of the State, to take, damage, or destroy private property for public use. This right has been guaranteed by our Constitution. Public roads are a great public convenience, and, if necessary to carry out plans for the completion of a public road, private property may be totally or partially taken or damaged to accomplish that purpose. This carries with it the power, if need be, that a servitude may be created on land not actually taken or occupied by the public highway, for the purpose of carrying off the water, the natural flow of which is changed or diverted by the construction of such highway. This provision of the Constitution is broad enough to empower the State to do any lawful thing necessary to build a public highway.

The liability of the State under Section 17 of Article 1, supra, for taking, damaging, or destroying private property for public use, where the authority is properly exercised, should not be confused with the claim for damages caused by the negligent acts or wrongs committed by its agents or officers. In the first class of cases the taking or damaging of such property is done for the State in the exercise of lawful authority. The right to exercise this authority, and the command to adequately compensate the owner for such property, are expressly provided in the section of the Constitution above quoted. In other words, where the State has exercised its lawful authority to take or damage private property for the construction of a public highway, it has the power to carry out its plans relating to such highway and compensate the owner of such property for the damages which proximately resulted from the construction of such highway. Nussbaum v. Bell County, 97 Texas 86, 76 S. W. 430.

Article 1, Section 14, of the Texas Constitutions of 1845, 1861, 1866, and 1869 correspond to Article 1, Section 17, of the present Constitution, adopted in 1876, copied above, and provided that no person's property should be "taken" for public use without adequate compensation being made, and did not contain the additional proviso of the present Constitution, that no person's property shall be "damaged or destroyed" for public use, without adequate compensation being made.

The Courts of this State, in construing the section of the constitutions prior to the present one, which was adopted in 1876, held that there must be a direct, physical invasion of the property before the owner thereof could be compensated for a "taking" of such property. Such constructions of the early

provisions of our Constitution resulted in much injustice to the owners of property, and in 1876 the Constitution was changed to read as above quoted.

A construction of the amended provision of Section 17 of Article 1 of the Constitution reached this Court in the case of Gainesville, H. & W. R. Co. v. Hall, 78 Texas 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42. After discussing the provision of the Constitution involved here, and the change made by the amendment thereof, the Court said: "The use of the disjunctive conjunction in the provision of the constitution under consideration indicates clearly that it was not necessary that there should be a taking to entitle the owner of property to compensation for any special damage that might result to it from the construction of a public work. * * * We think that the intention of the words 'damaged or destroyed' in the provision of the constitution under consideration was at all events intended to obviate any question of exemption from liability to the owner for property injuriously affected by a public work, and to provide a remedy for any damage which in such cases the legislature might authorize to be inflicted." For a further discussion of this question we refer to the following cases: Cooper v. City of Dallas, 83 Texas 239, 18 S. W. 565, 29 Am. St. Rep. 645; Harris County v. Gerhart, 115 Texas 449, 283 S. W. 139; Southern Surety Co. v. McGuire, 275 S. W. 845 (writ refused); Ft. Worth Improvement District No. 1 v. City of Ft. Worth, 106 Texas 148, 158 S. W. 164, 48 L. R. A. N. S. 994; Chicago, R. I. & G. Ry Co. v. Tarrant County Water Control & Improvement District No. 1, 123 Texas 432, 73 S. W. (2d) 55; City of Waco v. Roberts, 121 Texas 217, 48 S. W. (2d) 577.

Among the states having constitutional provisions similar to the one above quoted are Arkansas, California, Colorado, Georgia, Illinois, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, South Dakota, West Virginia, and Wyoming. The courts of those states having such provision in their constitutions hold that private property shall not be taken or damaged for public use without compensation. We cite some of the cases as follows: Rigney v. City of Chicago, 102 Ill. 64; City of Chicago v. Taylor, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638; Chicago & W. I. R. Co. v. Ayers, 106 Ill., 511, 518; Mayor of City of Macon v. Daley, 2 Ga. App. 355, 58 S. E. 540; Dickerson v. Okolona, 98 Ark. 206, 135 S. W. 863, 36 L. R. A. N. S. 1194; and see also 20 A. L. R., 516, in which many of the cases on this subject are annotated; Gledhill v. State of Nebraska, 123 Neb. 726, 243 N. W. 909; Cline v. Nor-

fold & W. Ry. Co., 61 W. Va. 436, 71 S. E. 705; Pelton Farm Co. v. Macon County, 49 Geo. App. 239, 175 S. W. 29; Young v. Commissioners of Highways, 134 Ill. 569, 25 N. E. 689; Roe v. Howard County, 75 Neb. 448, 106 N. W. 587, 5 L. R. A. N. S. 831; Guest v. Commissioners, 90 Md. 689, 45 Atl. 882; Mason City & Ft. D. R. Co. v. Wolf, (8 Cir.) 148 Fed. 961; Idaho & W. N. R. R. v. Nagle, (9 Cir.) 184 Fed. 598; Mason City & Ft. D. R. Co. v. Kentucky, Kennedy (8 Cir.) 192 Fed. 538; Roe v. Cook County, 358 Ill. 568, 193 N. E. 472; Chicago, R. I. & P. Ry. Co. v. Prigmore, 180 Okla. 124, 68 Pac. (2d) 90; Hardy v. Simpson, 118 W. Va. 440, 190 S. E. 680; Dallas County v. Dillard, 156 Ala. 354, 47 So. 135, 18 L. R. A., N. S., 884; Heflin v. City of Lincoln, 131 Neb. 484, 268 N. W. 364.

■ It is also contended that the State is not liable for interest upon claims or judgments against it, in the absence of an agreement on the part of the State to pay interest. Generally this is the accepted rule, but there are certain exceptions to such rule. The general rule is that private property cannot be taken or damaged for public use without adequate compensation being paid therefor; and when such property is taken or damaged, such compensation shall first be made or secured by a deposit of money. The Constitution makes an exception of this rule in favor of the State. Under this express power the State can take or damage private property for public use without payment in advance therefor, and leave the owner thereof without payment until the Legislature sees fit to make an appropriation for same.

In this instance plaintiffs' land was damaged in 1927, and so far no payment has been made for such damages; nor has the State offered to pay same. The Constitution expressly declares that adequate compensation shall be made to the owner for such damages, but leaves him to await the pleasure of the State to make such payment. Plaintiffs were compelled to resort to the courts for a determination of their rights, and now have a judgment, after the lapse of many years, for the amount of their claim.

In a great majority of the jurisdictions interest is allowed as part of the damages or compensation to the owner whose property has been damaged or taken under the power of eminent domain provided for under the provisions of the Constitution. For an exhaustive annotation of the cases bearing on this subject, we refer to 96 A. L. R., p. 18. For a discussion of the cases relating to interest on amount of damage in eminent domain cases, see 96 A. L. R., p. 150.

In this State it has been held that, in an action for damages for injury to real property, the owner is entitled to legal interest on the damages from the time the injury was inflicted. For a discussion of this question see Texarkana & F. S. Ry. Co. v. Brinkman (Tex. Com. Appls.), 291 S. W. 860; Missouri, K. & T. Ry. Co. of Texas v. O'Conner et al. (Tex. Civ. Appls.), 51 S. W. 511; Panhandle & G. Ry. Co. v. Kirby (Tex. Civ. Appls.), 108 S. W. 498; Baldwin v. City of San Antonio, 59 Texas Civ. Appls. 262, 125 S. W. 596; Houston Ind. School Dist. v. Reader et al (Tex. Civ. Appls.), 38 S. W. (2d) 610; Routh et al v. Texas Traction Co. (Tex. Civ. Appls.), 148 S. W. 1152; Cunningham et al v. San Saba County, 11 Texas Civ. Appls. 557, 32 S. W. 928; Morris v. Coleman County (Tex. Civ. Appls.), 35 S. W. 29. The foregoing rule also prevails in the federal courts. Jacobs v. United States of America, 290 U. S. 13, 78 L. Ed. 142, 54 Sup. Ct. 26, 96 A. L. R. 1.

In this instance the State damaged the land and did not offer to pay for such damages. The plaintiffs ask for interest in their suit for damages, and the trial court allowed interest on such claim. The Court of Civil Appeals reformed the judgment of the trial court as to part of the interest.

The contention of the State that plaintiffs are not entitled to collect interest on their claim for damages is overruled.

■ The State contends that the judgment, based upon the answers of the jury to the special issues submitted, should have been for the sum of $13,500.00 or $27.00 per acre, for the land actually overflowed.

By issue No. 1 the jury was, in effect, asked if the land of the Hales was injured by reason of the construction of the temporary or old highway dump across the bottom of Keechi Creek, adjacent to the south end of the Hale farm. By issue No. 2 the jury was, in effect, asked if the dump mentioned in issue No. 1 was constructed in such a manner as to cause overflow, etc., of the property or farm of the Hales. By issue No. 3 the jury was, in effect, asked how many acres of the Hale land were caused to overflow, etc., by the dump mentioned in issues Nos. 1 and 2. By issue No. 4a the jury was, in effect, asked to find the value, actual or intrinsic, of the Hale farm immediately before the construction of the dump mentioned in the preceding issues. By issue No. 4b the jury was, in effect, asked to find the value, actual or intrinsic, of "said property" immediately after the construction of the dump mentioned in the preceding issues.

The jury answered issues Nos. 1 and 2, "Yes." The answer to issue No. 3 was, "500 acres." The answer to issue No. 4 was, "$75.00 per acre on entire farm." The answer to issue No. 4a was, "$48.00 per acre of entire farm."

Article 2211 of the Revised Civil Statutes of 1925 provides that, "The judgments of the Court shall conform to the pleadings, the nature of the case proved, and the verdict, * *." The rule is well established that when the findings on special issues are ambiguous, in order to arrive at their proper interpretation the court may examine not only the issues submitted, but also the pleadings and the evidence; and after an examination of such pleadings and evidence the intention of the verdict can be ascertained. Such verdict so construed constitutes the proper basis for a judgment. If conflicting findings can be harmonized or reconciled, a judgment may be rendered in conformity therewith. 25 Tex. Jur., p. 491, sec. 107.

Let us refer to the pleadings. It was admitted that the plaintiffs were the owners in fee simple of the lands described in paragraph 2a of their petition. This part of the petition is copied in the statement of facts for the purpose of showing the land involved. When the number of acres described therein are considered, they create an acreage in excess of 1400 acres; and when the allegations are considered, it is difficult to determine how many acres of land were in the Hale farm. The petition further alleges that "all of said tracts describe adjoin and together constitute and are one farm or plantation of *about* 1400 acres, about 950 acres of which is, and for more than ten years last past has been used * * * as one farm." Thus it will be seen that the allegations are not definite about the 1400 acres; and if 950 acres is used as a basis for the judgment, it is far less than the judgment rendered by the trial court.

It is further alleged that "at least 800 acres of said land lay on the east side of Keechie Creek, and at least 800 acres thereof was good * * land, of which 800 acres and some 200 aditional acres of the adjacent land was cleared and in cultivation." It is also further alleged that the water caused and will cause a deposit of sand to settle over "about 800 acres of said land." In paragraph 4b plaintiffs further say that "said entire body of land described in this paragraph has been practically destroyed and rendered of practically no value or benefit to plaintiffs to their damage in the sum of $100.00 per acre for said tract." No tract of land is described in said paragraph 4b, so we cannot tell how many acres are claimed to have been damaged $100.00 per acre.

Many other allegations are contained in said petition, but nowhere is it alleged that the entire tract of 1400 acres has been damaged by reason of the construction of the dump. In paragraph 4a, after referring to the building of the dump, plaintiffs allege that defendants committed acts "* * * so as to render all of said land last above referred to of very little and practically no value and permanently injured same and appropriated same to public use and purposes as aforesaid." It will be noted that the above tract referred to in the petition is that contained in paragraph 3k as "about 800 acres of said land."

When we look to the pleadings and the evidence we encounter much difficulty in arriving at the number of acres of land alleged to have been damaged by the construction of the dump in question. Taking the pleadings and the evidence, and giving them the most favorable construction, we are unable to say that they form the basis for the judgment rendered by the court giving damages to 1400 acres of land. The trial court in entering judgment for the amount above described assumed it as conclusively established that the Hale farm consisted of 1400 acres, and thus gave judgment in favor of plaintiffs for $27.00 per acre on the entire 1400 acres.

Keeping in mind the evidence and the pleadings, it appears that issue No. 3 was submitted by the court in order to ascertain the number of acres caused to be overflowed by the dump, and on which sand or other substance injurious to growing crops was deposited. Certainly the court must have had some purpose in submitting this issue to the jury for a finding thereon. When issue No. 3 is given this construction, then the effect of issues Nos. 4 and 4a is to ask the jury to find answer as to the number of acres found in response to issue No. 3.

When we consider as a whole the special issues submitted to the jury and the answers thereto, it appears to us that the judgment entered by the trial court should have been one allowing damages to the 500 acres submitted in issue No. 3, and that the judgment in favor of the Hales for the amount above described does not find adequate support in the pleadings and the verdict. There is adequate support in the pleadings and the verdict to support a judgment in favor of the Hales for $13,500. If the court had entered a judgment in favor of the Hales for the sum of $13,500.00, under the state of this record the State would have no basis for objection. As we view it, this is the only judgment that could be sustained by this record.

It is the duty of a court, in considering issues and answers given, to enter a judgment that will harmonize with such issues and the answers of the jury. It therefore follows that the judg-

ments of the trial court and of the Court of Civil Appeals should be reformed, so as to allow a recovery for the Hales in the sum of $13,500.00, being damages to 500 acres of land at $27.00 per acre, with interest thereon at the rate of six per cent. per annum from September 1, 1927.

■ The Act authorizing the plaintiffs to file this suit further provides that "upon the final judgment being recovered against said defendants the same shall be paid out of the State Highway Funds." For the reasons given by this Court in the case of National Biscuit Co. v. State, 134 Texas 293, 135 S. W. (2d) 687, that part of the Act is held invalid.

The pleadings and the verdict support the foregoing judgment. The State contended that such judgment was the only one that the trial court should have entered, and therefore the State is in no position to complain of same. In order that the ends of justice may be subserved, this Court, in the exercise of its power and discretion, frequently reverses and remands causes for new trial. It may be that plaintiffs could further develop their side of this case, and if they are dissatisfied with the judgment rendered herein they may file a motion to have this case remanded for another trial, and this Court will grant such motion.

The judgments of the Court of Civil Appeals and of the trial court are hereby reversed in part and reformed as above indicated, and as so reversed in part and reformed they are affirmed.

Opinion delivered January 22, 1941.