# CITY OF HOUSTON

v.

## ADAMS et al.

No. 12739.

Court of Civil Appeals of Texas.

Galveston.

May 20, 1954.

Rehearing Denied June 24, 1954.

Will G. Sears, City Atty., Houston, Richard H. Burks, Senior Asst. City Atty., Houston, Robert L. Burns, Senior Asst. City Atty., Houston, for city of Houston.

Vinson, Elkins, Weems & Searls, C. E. Bryson, Ben H. Rice, III, Houston, for Mary E. Adams.

Judge Roy F. Campbell, pro se.

HAMBLEN, Chief Justice.

The cause was filed in this Court by the City of Houston as an appeal from an order of the District Court of Harris County entered on March 24, 1954, wherein that court refused to determine the amount of security which the City should be required to give as

a prerequisite to taking immediate possession of property under the provisions of Art. 3269, Revised Civil Statutes 1925, as amended, Vernon's Ann.Civ.St. art. 3269. Appellee, Mary E. Adams, filed first a motion to dismiss the appeal on the ground that it was an attempt to appeal from an interlocutory order that did not fall within the class of interlocutory orders from which appeals are allowed by law, and in addition filed a brief answering the merits of the appeal to be considered in the event of a ruling adverse to her on the motion to dismiss. Appellant, City of Houston, filed, by leave of court, for consideration in the event the order of March 24, 1954 is not appealable, a petition for mandamus, praying that the respondent, Roy F. Campbell, as Judge of the District Court of Harris County, 80th Judicial District, be ordered and commanded to determine the security which may be proper for the payment of any damages that may be assessed on the City's pleading for condemnation and that upon the deposit thereof it be granted the right to take possession of the property in dispute. This Court took submission of both the appeal and the petition for mandamus and heard argument upon all contentions made by all litigants. The following facts are material to our discussion of the several unique questions thus presented:

The suit was instituted by appellee, Mary E. Adams, as a petition for temporary injunction restraining appellant, City of Houston, and its contractor, Gulf Bitulithic Company, from emptying water or other matter from a storm sewer being constructed on Old Post Oak Road in the City of Houston into a natural drain traversing appellee's four acre tract of land. The issuance of the temporary injunction prayed for was resisted by the appellant, City of Houston, solely upon the ground that it held the superior title to such portion of appellee's land as was included in the natural drain. In this connection it is noted that appellant's claim of title is rested upon the proposition that appellee's land was subject to a natural servitude in favor of the upper riparian owners insofar as surface waters were concerned, which created an easement inuring to the appellant as a public corporation. After a hearing the injunction prayed for was granted. No appeal was taken from that order.

Thereafter appellant filed an amended answer and cross-action and a motion to dissolve the temporary injunction. The cross-action was for title and possession of its claimed easement across appellee's land and alternatively for condemnation. Such alternative plea for condemnation was expressly conditioned upon a final judgment that appellant does not have the easement to which it claims title. The record reflects no order either granting or denying the motion to dissolve the injunction.

Thereafter appellant filed a pleading designated as its second amended answer and cross-action, wherein it alleged three cross-actions, as follows: (1) a plea in trespass to try title to the natural drain which was described by metes and bounds, (2) condemnation of such additional flowage rights and easements across the described drain as the court might determine it did not own, and (3) condemnation of an easement for drainage purposes across the described natural drain in the event the court order determined that appellant did not own the easement described in its trespass to try title count. Both cross-actions for condemnation contained a prayer that the court determine and fix the amount of security proper for the payment of any damages that might be assessed on appellant's plea for condemnation and that upon the deposit thereof appellant be permitted to take possession of the described easement.

After hearing, the trial court, on March 24th, entered an order denying appellant's request that the amount of security be determined and fixed and that it be allowed to take immediate possession of the easement. It is from this order that the appeal has been perfected.

■ We think that appellee's motion to dismiss the appeal is well taken and must be granted. The appealed-from order is

clearly interlocutory since all issues raised by the pleadings of both parties are still to be determined by the trial court upon final hearing of the suit which still pends in that court. The order contains a recitation that the relief sought by appellant in its alternative cross-actions for condemnation would, if granted, have the effect of dissolving and setting aside the temporary injunction previously granted by the court. It appears to be appellant's contention that such recitation constitutes the order as one refusing to dissolve a temporary injunction and, therefore, an appealable order. We disagree with this contention. The order contains several findings by the trial court, of which the recitation referred to is but one. All such findings were made by the court in support of its order. The order remains one denying appellant's prayer that the court determine and fix the security which appellant should give before taking possession of the land in dispute. As such it does not fall within any of the specific classes of interlocutory orders from which an appeal is allowed by law and is, therefore, under the general rule not an appealable order.

The petition for writ of mandamus presents a more difficult question. In it, as relator, the City of Houston contends that the provisions of Art. 3269, Revised Civil Statutes, 1925, as Amended, impose a mandatory ministerial duty on the trial court to determine and fix the amount of security necessary to protect the landowner and upon deposit of such security must permit the condemning authority to occupy the land sought to be condemned. The respondent, Roy F. Campbell, Judge of the District Court of Harris County, 80th Judicial District, answers that the relator, having refused to waive its right to urge its claim of title to the land in dispute, cannot avail itself in its alternative condemnation actions of the statutory right of requiring the court to determine the amount of security which it should deposit as a prerequisite to taking immediate possession of the land. This contention is supported in the record by a finding to that effect in the order of March 24, 1954.

The applicable provisions of Art. 3269, Revised Civil Statutes 1925, as Amended, are as follows: "When the State of Texas, or any county, incorporated city, or other political subdivision, having the right of eminent domain, or any person, corporation or association of persons, having such right, is a party, as plaintiff, defendant or intervenor, to any suit in a District Court, in this State, for property or for damages to property occupied by them or it for the purposes of which they or it have the right to exercise such power of eminent domain, or when a suit is brought for an injunction to prevent them or it from going upon such property or making use thereof for such purposes, the Court in which such suit is pending may determine the matters in dispute between the parties, including the condemnation of the property and assessment of damages therefor, upon petition of the plaintiff, cross-bill of the defendant or plea of intervention by the intervenor asking such remedy or relief; and such petition, cross-bill of [or] plea of intervention asking such relief shall not be an admission of any adverse party's title to such property; and in such event the condemnor may assert his or its claim to such property and ask in the alternative to condemn the same if he or it fails to establish such claim; and provided that, if injunctive relief be sought, the Court may grant such relief under the Statutes and Rules of Equity, or may, as a prerequisite for denying such relief, require the party seeking condemnation to give such security as the Court may deem proper for the payment of any damages that may be assessed on such party's pleading for condemnation. Acts 1899, p. 18; Acts 1931, 42nd Leg., p. 413, ch. 245, § 1; Acts 1945, 49th Leg., p. 404, ch. 259, § 1."

█ There is no doubt as to the constitutionality of such Statute, nor is there any doubt but that if the provisions of the Statute and the applicable provisions of the Texas Constitution are complied with, there is imposed upon the District Court the duty of determining the amount of security to be deposited by the condemning authority and upon the deposit thereof

of permitting immediate possession of the land by such condemning authority. We consider the decision of the Supreme Court of Texas in the case of Brazos River Conservation and Reclamation District v. Costello, 135 Tex. 307, 143 S.W.2d 577, 130 A.L.R. 1220, to be ample authority for the stated propositions but we have not been able to find, nor has our attention been directed to, any decision by any appellate court of this State which holds that a condemning authority, while asserting and insisting upon the inconsistent remedy of title and possession as opposed to condemnation, has the right to require the court to fix the security to be deposited before taking immediate possession of the land, a right which we hold to be available to a litigant who seeks unqualifiedly and exclusively the right of condemnation.

In Brazos River Conservation and Reclamation District v. Costello, the Supreme Court upheld the constitutionality of Art. 3269 because it means that the court in the exercise of its power must require that every prerequisite of the Constitution be fully complied with before a person's property can be applied to public use. The applicable provision of the Texas Constitution is that portion of Art. I, Sec. 17, Vernon's Ann.St. which is as follows: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; * * *."

Prior to its amendment by the Act of 1945, Art. 3269 expressly provided that a plea for condemnation shall be an admission of the plaintiff's title to such property. By the Act of 1931 and prior Acts condemnation could be sought in the District Court only when the condemning agency was named as a party defendant. The Act of 1945, which is the present Art. 3269, enlarged the scope of the District Court's jurisdiction to include cases wherein the condemning agency was either plaintiff, defendant or intervenor and further expressly provided that alternative allegations seeking a condemnation of the property in controversy shall not constitute an admission of any adverse party's title to such property. The Statute has thus clearly made available to condemning authorities the right to assert inconsistent remedies in the same manner that inconsistent remedies or defenses could be asserted in other classes of litigation.

However, it is well settled that any litigant who seeks to gain an advantage by virtue of one asserted remedy or defense must abandon or waive any remedy or defense inconsistent therewith, and it is further recognized that having gained such advantage the litigant has irrevocably elected to pursue that remedy to the exclusion of all remedies inconsistent therewith.

In order to be consistent with the decisions of our courts dealing with the exercise of the right of eminent domain, we feel that the last stated principles must be applicable to Art. 3269 as it is presently written, and when viewed in the light of the heretofore recognized principles of law, such an intention is discernible in the words of the Statute itself.

It is to be noted that the Statute provides that if injunctive relief be sought, the court may grant such relief under the Statutes and rules of equity, or may, as a prerequisite for denying such relief require the party seeking condemnation to give such security as the court may deem proper for the payment of any damages that may be assessed. If the relator is correct in its contention that an alternative plea for condemnation imposes a mandatory and ministerial duty on the court to determine and fix the amount of security and upon the deposit of same to permit immediate possession to be taken, regardless of how inconsistent to the remaining remedies sought by the condemning agency, then clearly the first quoted portion of the Statute is meaningless. Under such construction there could never exist a situation in which the court could grant in-

junctive relief under the Statutes and rules of equity.

In Brazos River Conservation and Reclamation District v. Costello, no remedy inconsistent with condemnation was asserted by the condemning agency. In impliedly holding that the duty of determining and fixing the security to be deposited is a mandatory one, the Supreme Court conditioned such duty upon the proviso that every prequisite of the Constitution be fully complied with. The Constitution requires that when property is taken for public use adequate compensation must first be made or secured by deposit of money. Our courts have consistently held that the Constitutional requirement is not only by a deposit of money which is not only adequate but is absolute and unqualified.

A deposit which is tendered only upon the condition that the party seeking condemnation be first unsuccessful in establishing its inconsistent plea of superior title is patently not absolute and unqualified. The right to take immediate possession by giving security is a right granted only to a condemner. It is a right which is contrary to every statute and rule of equity applicable to litigants contesting the title to property. In the cited case the Supreme Court held that in construing a Statute, Constitutional provisions may be read into and considered a part of a Statute. When the Statute now involved is so read, it is apparent to us that in order to impose the mandatory duty upon the court of determining and fixing the security to be deposited and thereupon permitting immediate possession to be taken, the condemning agency must tender such security absolutely and unqualifiedly. To do that all remedies inconsistent with condemnation must be abandoned. In order to avail itself of the inconsistent remedies which the Statute allows the condemning agency must await the final adjudication of all issues raised before taking the property for public use. It cannot obtain an advantage available to it only under one asserted remedy without thereby irrevocably electing to pursue that remedy to the exclusion of all remedies inconsistent therewith.

The respondent in the present case refused to determine and fix the amount of security which relator should deposit before taking possession of the property in dispute because relator insisted upon its right to continue to assert the inconsistent plea that it have judgment for title and possession of the property. Such refusal was, in our opinion, necessary to preserve to the adverse party the guarantees of our Constitution. The petition for writ of mandamus is, therefore, refused.

Appellee's motion to dismiss granted, appeal dismissed, and relator's application for writ of mandamus refused.

CODY, Justice (dissenting).

In my opinion, by force of Art. 3269, V.A.T.S., as amended in 1945, the City not only had the right to present in the alternative its action to condemn so much of Mrs. Adams' land as was necessary to dispose of its storm waters, but also had the concomitant right to have the court fix and determine the amount of security proper for the payment of damages for the condemnation of the property in question, and, upon the City making the required deposit, the City should be permitted to take possession of the land necessary to be condemned and proceed with its public improvement.

In this way the public work involved would not be held back or hampered to await the determination of who owned the property sought to be dedicated to the public use, the City or Mrs. Adams. The Supreme Court, in Brazos River Conservation and Reclamation Dist. v. Costello, 135 Tex. 307, 143 S.W.2d 577, 580, 130 A.L.R. 1220, said, "Clearly the object of Article 3269 is to expedite the determination of all matters to which it relates. * * * When the terms of this Act are read in connection with the provisions of the Constitution, it means that the court, in the exercise of its power, must require that every prerequisite of the Constitution be fully complied with before a person's property can be applied to public use." The City has complied with every prerequisite of the Constitution in

that it has sought to have the court determine the amount of security which it must put up and it has offered to put up such security, unqualifiedly and unconditionally, upon the only terms which in law, equity or conscience, Mrs. Adams would be entitled to it, namely, that if the City fails to establish that it owns the land which in the alternative it seeks to condemn.

In principle the case before the Court does not differ from a case in which the condemning authority desires to condemn a certain specific tract of land for a public purpose but cannot determine whether same belongs to A or B, both of whom assert ownership thereto. In such case the condemning authority, I believe, would have the right to undertake to condemn the property necessary to be used for a public purpose and pay into the court the value thereof, to be paid by the court to whom the court determines is the true owner of said tract of land. (I don't mean to imply that public policy would not forbid the condemning authority from bringing suit to condemn numerous tracts of land and interplead various persons who have no claim whatever to certain of the specific tracts of land sought to be condemned. Such might easily, instead of promoting the avoidance of a multiplicity of suits, have the effect of promoting unnecessary litigation burdensome to parties who have no claim whatever on certain of the tracts.)

Here the offer by the City to secure Mrs. Adams is not a qualified or a conditional offer. If she is found by the court to own the land, she is secured. If the City is found by the court to own the land, the Constitution does not contemplate that she should be paid for the land which the City owns and Art. 3269 has prescribed a specific rule governing the condemnation proceedings in such case. It is true that upon the hearing of Mrs. Adams's application for a temporary injunction the court tentatively found, for the purpose of that hearing, that Mrs. Adams owned the title to the land in dispute and that she would be irreparably damaged if the City proceeded with its contemplated public improvement. But if upon final hearing it should be determined that Mrs. Adams owned the fee simple title to the land involved, her ownership could not stand up against the right of the City to condemn her land for the purpose of casting surface and storm waters thereon. State v. Hale, 136 Tex. 29, 146 S.W.2d 731; Soule v. Galveston County, Tex.Civ.App., 246 S.W.2d 491, 492, (writ refused); State Constitution, Art. I, Sec. 5. Originally the right to condemn private property for public use was not conditioned upon any obligation to adequately compensate the owner. There is still no such thing as an equity to prevent the exercise of eminent domain where the condemning authority complies with all lawful prerequisites.

In my opinion, under the authority of the Costello case, supra, where, as here, the City has made an unqualified and unconditional offer to secure Mrs. Adams for the value of her property, if it is indeed her property, it has the right presently to take the same; and if the City fails to establish its title, Mrs. Adams is entitled to the security. The City could have no right, having once offered in the alternative to secure Mrs. Adams, to take down such security.

There is in my opinion a difference between inconsistent remedies and alternative remedies. Where a party must choose between inconsistent remedies, he must choose the right remedy at his peril. However, where a party is given alternative remedies, he has the right to the alternative remedy if the primary remedy is shown not to be available to him. Here, by Statute, the condemning authority has the absolute right to condemn. His failure to prove up title cannot defeat his right to condemn. But he has no need to condemn if he proves up title. There is no need to await the determination of the title contest, before proceeding with the condemnation. The title contest is only to determine whether the money which has been paid into court belongs to the condemning authority or to the cross-defendant in the condemnation proceedings. The condemning authority's right to expedite the condemnation does not have to await the de-

termination of title. If Mrs. Adams owns the property sought to be condemned, she gets its value.

Relator's motion for rehearing should, in my opinion, be granted, and I dissent.