**Robert L. MENCONI et al., Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 15048.**

Court of Civil Appeals of Texas, San Antonio.

March 29, 1972.

Rehearing Denied May 17, 1972.

James R. Warncke, Oliver & Oliver, John Oliver, San Antonio, for appellants.

Crawford C. Martin, Atty. Gen. of Texas, Nola White, First Asst. Atty. Gen., Alfred L. Walker, Watson C. Arnold, Woodrow Curtis, Louis G. Neumann, William R. Travis, Asst. Attys. Gen., Austin, for appellee.

BARROW, Chief Justice.

Appellant, Robert L. Menconi, Robert A. Kline, and I. Kenneth Kline, have perfected an appeal from a take-nothing summary judgment in their suit in the nature of an inverse condemnation to recover for damages allegedly done to abutting land in 1948–1949, when U.S. Highway No. 81 was reconstructed and rebuilt by the State Highway Department. It was alleged that the highway was elevated and widened, thereby materially and substantially impairing reasonable access to their tract and causing surface waters to be diverted across said tract which constituted a taking or damaging of said property for public use without compensation within the meaning of Article 1, Section 17, of the Texas Constitution, Vernon's Ann.St.

The land in controversy was acquired by the Kline brothers about 1940. In 1968 the tract was leased to appellant Menconi and as a part of the consideration therefor, he was assigned any cause of action then owned by the Klines. On June 4, 1969, the Legislature granted appellants permission to file suit against State; and on April 17, 1970, this suit was filed. State moved for a summary judgment based on the pleadings, deposition of the Kline brothers and certain stipulations. State asserted it was not liable for three reasons: (1) no valid claim lies against the State in that only the City of San Antonio had the statutory power to condemn this land which was located within the city limits; (2) the cause of action is barred by the two-year statute of limitations; and (3) the cause of action is barred by laches as a matter of law.

The basis of the trial court's judgment is not shown and, therefore, appellants have asserted by four points of error that State is not entitled to judgment on any of the grounds. We conclude that the record before us establishes that the cause of action is barred by laches or stale demand as a matter of law and, accordingly, do not consider the merits of the claim.

The Kline brothers, hereinafter referred to as Kline, owned 22 acres of land with 1100 feet of frontage on the south side of U.S. #81. Although within the city limits of San Antonio, this was largely rural acreage on both sides of the highway in 1948.

Kline had only a night club and a small government surplus building on their property. Across the highway from their property was a farm and the surface waters drained into an earthen tank just north of the highway adjoining the Kline tract. In June, 1948, City of San Antonio and State entered into a construction agreement, whereby State agreed to widen and reconstruct this highway within the City limits; and City agreed to indemnify State for all damages to abutting property arising out of the performance of this work. The highway was elevated and widened from 30 feet to 60 feet. The culvert then under said highway was also widened. The highway and culvert as widened took up most of the right-of-way. Robert Kline testified that

this substantially impaired the access from Kline's tract and also resulted in surface waters going directly through the culvert onto Kline's property. Shortly thereafter, a large community center was built north of the highway, and the farm was made into residential subdivisions. This greatly increased the run-off of surface waters; and since the earthen tank was leveled and paved over for the community center, the water flowed in greatly increased quantities onto Kline's property. Kline consulted with several attorneys and protested during the intervening years to the contractor who performed the reconstruction project, the State Highway Department, and the City of San Antonio. Some relief was granted by the City in helping Kline to build up his frontage property with fill dirt. The first formal action taken against the State was the House Concurrent Resolution of the 61st Legislature which was adopted by the House on May 23, 1969.

It is seen that there was a delay of over twenty years in asserting this claim against the State. Appellants' only explanation for this delay is that they did not know any legislator and, thereby, were prevented from securing legislative consent to sue the State. It has been suggested by one writer that since inverse condemnation is based on a constitutional provision that is on a level equal to the constitutional provision prohibiting suits against the State without its consent, Article 1, Section 17, may be self-executing. See Cabaniss, Inverse Condemnation in Texas, 44 Texas Law Review 1584, 1586 (1966). In State v. Hale, 136 Tex. 29, 146 S.W.2d 731 (1941), the Supreme Court said, at least by dictum, that in order to maintain such a suit, it was essential that the State should give such consent. Accordingly, we assume,

without deciding, that consent was necessary for bringing this action.

Appellants assert that limitations would not begin to run until such consent was obtained,[1] and, therefore, the cause is not barred by even the two-year statute of limitations.[2] Nevertheless, the doctrine of laches or stale demand will bar the assertion of this claim. In Keene v. Reed, 340 S.W.2d 859, 860 (Tex.Civ.App.—Waco 1960, writ ref'd), it was held that laches supported the take-nothing judgment irrespective of the plea of limitations. It was said: "In a proper case laches is not precluded 'even though the statutory period has not run.'" In City of Fort Worth v. Johnson, 388 S.W.2d 400 (Tex.1964), it was recognized that two of the essential elements of laches are (1) unreasonable delay by one having legal or equitable rights in asserting them, and (2) a good faith change of position by another to his detriment because of the delay.

The first element of unreasonable delay is clearly shown as a matter of law in this delay of over twenty years with full knowledge by appellants of their rights. A more difficult question is raised as to the second element of prejudicial harm. It is recognized that a long lapse of time has a tendency to obscure evidence and often makes it impossible to discover the truth. Here the clear and unequivocal testimony of Robert Kline establishes that there has been a dramatic change in the area in controversy in the past twenty years. It has gone from a rural area to an urban area. Where once farmland slowly drained into an earthen tank across the highway from appellants' property, there is now a large community center and parking lot which increases and accelerates the run-off of surface waters.

---

1. Barganier v. Guest, 246 S.W.2d 901 (Tex. Civ.App.—Waco 1952, writ ref'd); 37 Tex.Jur.2d, Limitation of Actions, Section 27, p. 122.

2. In Brazo River Authority v. City of Graham, 163 Tex. 167, 354 S.W.2d 99 (1962), the Supreme Court held that in

case of a "taking" within Article 1, Section 17, of the Texas Constitution, the City's right thereto would not be barred until the expiration of the 10-year period necessary to acquire lands by adverse possession under Article 5510, Vernon's Annotated Civil Statutes.

Where once there was farmland, there are now several residential subdivisions. Furthermore, appellants' own frontage property has been built up and now contains commercial buildings abutting on the highway. City administrations have come and gone since the indemnity agreement was entered into with the State. Undoubtedly, the memory of witnesses, even where still available, will have faded in these two decades.

Laches as a matter of law was recognized in Huffington v. Doughtie, 113 S.W.2d 343, 347 (Tex.Civ.App.—Galveston 1938, no writ), wherein it was said: " 'An equitable demand will become stale in 10 years after suit might have been brought without some excuse for the delay; the same being the longest period of limitation.' " We conclude from the record that prejudicial harm is shown here as a matter of law.

The trial court did not err in sustaining State's motion for summary judgment. The judgment is affirmed.

CADENA, Justice (concurring).

It is well settled that the defense of laches, even if it be assumed that such a defense is applicable to a suit for strictly legal, as distinguished from equitable, relief, relates to the lapse of time after a cause of action has accrued. Robertson v. Du Bose, 76 Tex. 1, 13 S.W. 300, 301 (1890); 30A C.J.S. Equity § 121, pp. 73–74.

If it be assumed that a suit for damages resulting from a "taking" or "damaging" of plaintiffs' property without payment of compensation, as required by our constitution, cannot be maintained against the State unless the State consents to be sued, then it is apparent that plaintiffs' cause of action in this case did not accrue until such consent was given. As our Supreme Court has pointed out, with respect to the plea of limitations:

"Limitation runs upon the right or cause of action accruing, and not before; and

this does not exist unless facts exist which authorize the person asserting claim to ask relief from some court of justice against the person who ought to make reparation. It involves the existence of the right to sue, as well as of facts deemed sufficient in a general sense to constitute a cause of action; and the right to sue may depend . . . upon the denial of the right to sue a state . . . which but for such legal denial would be subject to suit."

Stanley v. Schwalby, 85 Tex. 348, 19 S.W. 264, 266 (1892), rev'd, other grounds, Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259 (1892). See, also, Barganier v. Guest, 246 S.W.2d 901 (Tex.Civ. App.—Waco 1952, writ ref'd).

If plaintiffs' cause of action did not accrue until the State of Texas consented to be sued, then they have not been guilty of undue delay in filing their suit. However, in this case I believe that plaintiffs' right to sue was not dependent on the State's waiver of immunity from suit and that their cause of action arose at the time their property was damaged, so that their claim is barred by limitations.

Despite the casual statement, unsupported by citation of authority, in State v. Hale, 136 Tex. 29, 146 S.W.2d 731, 735 (1941), to the effect that plaintiffs who seek to recover for a taking or damaging of their property without payment of the compensation required by Article 1, Sec. 17, of the Texas Constitution must first obtain a waiver of the State's immunity from suit,[1] I would hold that the constitutional guarantee of adequate compensation for property taken or damaged is a self-executing consent by the State to be sued for such compensation. This is the conclusion reached by most of the courts which have considered the problem. Rose v. State, 19 Cal.2d 713, 123 P.2d 505 (1942); Lehman v. Williams, 301 Ky. 729, 193 S.W.2d 161 (1946); Sale v. State Highway and

---

1. The statement is obviously dictum, since it appears from the *Hale* opinion that the requisite consent had been granted.

Public Works Com'n, 242 N.C. 612, 89 S.E.2d 290 (1955). *Contra*, Fairclough v. Salt Lake County, 10 Utah 2d 417, 354 P.2d 105 (1960). See Note, 36 Notre Dame Law, 213 (1961); Note, 1962 Wash.U.L.Q. 210; Mandelker, Managing Our Urban Environment 525 (1963); Beuscher & Wright, Land Use Cases and Materials 724 (1969).

The conclusion that an inverse condemnation suit can be brought under the constitutional eminent domain clause even in the absence of the State's waiver of immunity insures the effectiveness of just compensation constitutional provisions. A landowner's constitutional right to compensation, a right which is expressly and unconditionally granted, cannot be held to be exercisable only at the discretion of the legislature.