Walter STEWART, Appellant,

v.

ALLIED BANCSHARES, INC. and R.C. Von Doenhoff, Trustee, Appellees.

No. 12–87–00121–CV.

Court of Appeals of Texas, Tyler.

Feb. 23, 1989.

Rehearing Denied March 17, 1989.

William R. Pemberton, Pemberton & Garner, Crockett, for appellant.

Jack R. Bailey, Houston, Joe Griffith, Crockett, Steven Sakonchick, Austin, for appellees.

COLLEY, Justice.

Walter Stewart, plaintiff/appellant, a long-time customer of Allied Bancshares, Inc., defendant/counter-plaintiff/appellee (hereinafter referred to as "Bank"), brought suit [1] against Bank for damages and injunctive relief based on the Bank's alleged breach of oral agreements to (1) "rearrange the [existing] loans of [Stewart] on a long-term payout, with a maximum interest rate of ten percent (10%)," and to (2) loan him $200,000 for the purchase of cattle.

The case was tried to a jury. Based on that verdict, the trial court on April 12, 1987, signed a judgment which denied Stewart damages and injunctive relief and granted Bank judgment for $305,945.77, postjudgment interest, and attorney's fees on its counterclaim.

Stewart presents one point of error, claiming that the jury's negative answer to Special Issue No. 9 is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We reverse and remand.

The undisputed documentary evidence reveals that Stewart signed and delivered to Bank the following notes, to wit:

| DATE | PRINCIPAL AMOUNT | MATURITY DATE |
| --- | --- | --- |
| October 11, 1978 | $200,000.00 | October 11, 1979 |

1. Stewart's original petition was filed on Octo-  ber 9, 1981.

| DATE | PRINCIPAL AMOUNT | MATURITY DATE |
|---|---|---|
| December 6, 1978 | $ 15,079.32 | December 6, 1979 |
| April 20, 1979 | 121,500.00 | April 20, 1980 |
| June 29, 1979 | 8,243.88 | * |
| June 29, 1979 | 1,738.02 | * |
| June 29, 1979 | 13,328.05 | June 29, 1982** |
| October 1, 1980 | 177,285.83 | October 1, 1981 |

\* Record does not show maturity date.

\*\* Payable in six semi-annual installments beginning December 26, 1979.

---

These documents and other exhibits conclusively establish that the $121,500.00 note was given in renewal and extension of the $200,000.00 note. Such documents and exhibits likewise conclusively establish that the $177,285.83 note was given in renewal and extension of the $121,500.00 note, the three June 29, 1979, notes in the principal sums of $8,243.88, $1,738.02, and $13,328.05, and twenty-nine other notes not listed above.

In its reply to Stewart's contentions, Bank argues that the evidence is conflicting as to whether it failed to refinance Stewart's indebtedness in accordance with the oral agreement, asserting that the jury chose to disbelieve Stewart's testimony at trial. The shortcomings of this argument become obvious upon consideration of the documentary evidence and the jury's answers to question nos. eight and nine of the charge. Those questions, and the answers thereto, are as follows, to wit:

### QUESTION NO. 8

At the time that the $200,000.00 Note was signed, did Allied Bank, acting through either Toby Young or Burl Hobson, agree that within one year the bank would refinance all of its loans to Walter Stewart in one long-term note with provisions for yearly or monthly installment payments?

ANSWER: Yes.

(Here follow instructions)

### QUESTION NO. 9

Did Allied Bank fail to keep its agreement?

ANSWER: No.

Stewart claims that the negative finding made by the jury is against the great weight and preponderance of the evidence. In ruling on such a point, we must follow carefully the guidelines established by the Texas Supreme Court. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Specifically, we must consider all the evidence before us, that which tends to support the finding as well as that which is contrary thereto. *Pool*, 715 S.W.2d at 635. In addition, we must demonstrate our analysis by a discussion of that evidence so that our opinion accurately reflects the intellectual processes we have employed, thereby enabling the Supreme Court to determine whether we have exercised our exclusive fact "unfinding" [2] jurisdiction in accordance with the correct standard of review. *Id.* The Supreme Court in *Pool*, in effect, requires us to *prove* that we followed the proper standard of review [3] in the exercise of the exclusive and final fact jurisdiction conferred upon the intermediate appellate courts by the provisions of Tex. Const. art. V, § 6. It is not sufficient to merely state that we *have done so.*[4] *Pool*, 715 S.W.2d at 635. Presumably, however, even under *Pool* the Supreme Court has no jurisdiction to substitute its judgment for ours when our mental processes are prima facie correct, even in instances in which we attach more

---

2. See *Pool*, 715 S.W.2d at 634; *Choate v. San Antonio & A.P. Ry. Co.*, 91 Tex. 406, 44 S.W. 69 (1898); and Garwood, *The Question of Insufficient Evidence on Appeal*, 30 Tex.L.Rev. 803, 813–814 (1952).

3. In deciding whether the jury finding is "manifestly unjust; ... shocks the conscience; or ... demonstrates bias."

4. See *Pool*, 715 S.W.2d at 638 (Gonzales, J., concurring opinion).

or less weight to certain testimony or evidence than the Justices of the Supreme Court would have done.

Recognizing that jury findings deserve deferential treatment,[5] we now review and discuss in certain detail all of the competent evidence and all reasonable inferences arising therefrom which bear on the issue of fact embodied in Question No. 9. To begin, the undisputed documentary evidence discloses that Bank did not renew Stewart's indebtedness by accepting his "long-term" note.[6] The record reflects that the first renewal of Stewart's indebtedness after October 11, 1978, the date on which the agreement was made by Bank, was on April 20, 1979, a time well within the terms of the agreement which the jury found to exist. The note of April 20, 1979, although it did renew and extend the time within which Stewart was required to pay the balance then due on the $200.000.00 note, required full payment by Stewart on or before April 20, 1980, in a single installment. The record also reflects that on December 6, 1978, and June 29, 1979, Stewart signed and delivered to Bank four other separate notes aggregating a debt sum of $38,389.27. The last renewal note was given by Stewart to the Bank on October 1, 1980. That note, in the principal sum of $177,285.83, represents all of Stewart's indebtedness to Bank, and was payable in *a single installment due one year* from the date of its execution.

Stewart testified that he had entered into an oral agreement with the Bank, whereupon his debt to the Bank "would be refinanced on a 15-year payment."

Larry Earl Young, Bank's loan officer and vice-president, testifying by deposition, stated that while the Bank had offered to accept one note to be "paid out over a period of time" with Stewart's land as the sole collateral, Stewart had "turned down the offer." Young also stated that "[Burl Hobson][7] wanted ... [to] lump everything in one note on an annual payout basis or some form of payout program." Hobson himself testified that the Bank offered to arrange repayment by Stewart of his indebtedness by some form of "payout."

In our judgment, the documentary evidence (notes) and the reasonable inferences to be drawn therefrom tend to prove the total absence of the existence of such an oral agreement for long-term financing. The jury, however, having considered all of the evidence and testimony, found the oral agreement to exist, but refused to find that the Bank failed to perform its obligation thereunder. The Bank offered no testimony or other evidence to demonstrate that it had, pursuant to the agreement, offered to Stewart a note in the aggregate of his debt payable in annual or monthly installments over a 15-year[8] period, and that Stewart had refused to accept and sign such note. We have carefully reviewed all the evidence and conclude that the finding complained of is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Certainly, the documentary evidence introduced by the Bank establishes that the Bank did in fact fail to keep its refinancing agreement. We sustain Stewart's point of error.

We reverse the judgment, set aside the jury's answer to Question No. 9, set aside the findings in response to Question No. 21 (reasonable attorney's fees for trial and appellate legal services performed, and to be performed by Bank's attorneys), and remand the cause for retrial of the fact issues embodied in Questions 9 and 21. Upon retrial, all fact issues decided by the jury, other than those presented in Ques-

**5.** Such findings have substantial significance under Tex. Const. art. I, § 15.

**6.** Amortizing Stewart's total debt to the Bank in annual or monthly installments over a 15-year period.

**7.** Burl Hobson was president of Bank during the times Stewart dealt with Bank.

**8.** Considered in context with the pleadings and evidence, we construe the jury's affirmative finding to Question No. 8, that Bank agreed to refinance Stewart's total debt "in one long-term note....[,]" to mean the debt would be amortized over a 15-year period of time. *Jackson v. United States Fidelity & Guaranty Co.*, 689 S.W. 2d 408, 412 (Tex.1985), *reaff'g State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 739 (1941).

tions 9 and 21, will be deemed, as a matter of law, to be established as found by the jury. Proper damage issues referable to the refinancing agreement, however, shall be submitted as the evidence may warrant. In the event of a retrial, we note that Question No. 16, and the jury's answer thereto, are immaterial to any disputed issue in the case.

The judgment is reversed and the cause remanded for new trial or further proceedings consistent with this opinion.